**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DRIPS HOLDINGS, LLC, a Delaware limited liability company | ) Case No: |
| | ) |
| | ) **COMPLAINT FOR:** |
| Plaintiff, | ) (1) Computer Fraud and Abuse Act |
| | ) ("CFAA") Violation |
| v. | ) (2) Federal Trademark Infringement |
| | ) (3) Federal Unfair Competition and |
| TELEDRIP LLC, f/k/a DRIPS. IO, a | ) False Advertising |
| Delaware limited liability company, | ) (4) Ohio Statutory Unfair Competition |
| TAYLOR MURRAY, an individual, | ) and False Advertising |
| MICHAEL C. LAIBLE, an individual, | ) (5) Ohio common law tortious |
| and DOES 1 through 5, inclusive | ) interference with Business |
| | ) Relationship |
| Defendants. | ) (6) Ohio common law Business |
| | ) Disparagement |
| | ) (7) Ohio Statutory and common law |
| | ) Deceptive Trade Practices |
| | ) (8) Ohio Statutory Engaging in a |
| | ) Pattern of Corrupt Activities ("Civil |
| | ) RICO") |
| | ) (9) Ohio Statutory Misappropriation of |
| | ) Trade Secrets |
| | ) |
| _____ | ) **JURY TRIAL DEMANDED** |

Plaintiff DRIPS HOLDINGS LLC ("Drips Holdings" or "Plaintiff"), for its Complaint against Defendants TELEDRIP, LLC, f/k/a Drips.io ("Teledrip"), TAYLOR MURRAY ("Murray"), and MICHAEL C. LAIBLE ("Laible") and JOHN DOES 1-5 (collectively, "Defendants") alleges as follows:

## PRELIMINARY STATEMENT

This is an action for, *inter alia*, CFAA[1] violation for unauthorized access to fraudulently acquire valuable information from a computer ("hacking") pursuant to 18 U.S.C. § 1030, trademark infringement, including unfair competition and false advertising in the Lanham Act, 15 U.S.C. §1051, *et seq.*, as well as engaging a pattern of corrupt activities pursuant to Ohio Revised Code ("Rev. Code" or "R.C.") §§ 2923.32 and 2923.34, misappropriation of trade secrets pursuant to Ohio Rev. Code §§ 1333.61 – 1333.69, and unfair trade practices pursuant to Ohio Rev. Code §§ 4165.01-2, *et seq.* and Ohio common law for unfair competition, tortious interference, business disparagement and deceptive trade practices.

## I. __INTRODUCTION__

1. This action arises out of Defendants' brazen and illegal scheme to deceive the public into thinking that Defendants are affiliated with or are the same as Plaintiff. Using Plaintiff's proprietary UI layout consisting of an AI-assisted SMS lead generation services, obtained through hacking, Defendants launched a business

---

[1] The CFAA is the federal anti-hacking law. Among other things, this law makes it illegal to intentionally access a computer without authorization or in excess of authorization.

platform that mimics the name, website, logo, and marketing to confuse the public, and trade off Plaintiff's goodwill and industry respect in order to divert customers to Defendants.

2.     Through Defendants' acts of hacking, deception, misappropriation of intellectual property and trade secrets, and other unfair business practices, Defendants built a business by tricking potential customers and others in the industry into thinking that they are dealing with Plaintiff when in fact they are not. Defendants benefitted economically through this stealing and trickery, causing substantial financial and business harm to Plaintiff, and generating irreparable confusion in the marketplace that persists to this day.

3.     Upon information and belief, this unlawful scheme originated with and was concocted by Defendant Murray, who colluded to conduct business under the name "drips.io" (a blatant rip off of Plaintiff's name and web identity), stole Plaintiff's proprietary UI layout, copied Plaintiff's brand and marketing style, and took other affirmative steps to deceive the public into believing that they (and the company) were Plaintiff or affiliated with Plaintiff, for the purpose of unlawfully cashing in on Plaintiff's success.  Defendants Does 1-5 aided and abetted Murray's scheme.

4.     For purposes of this Complaint, "Teledrip Enterprise" means each of the Defendants collectively, including the John Does.

5.     The Teledrip Enterprise constitutes an "enterprise" within the meaning of R.C. 2923.31(C) (Ohio RICO) because each of the Defendants is associated in fact and have worked in coordination in furtherance of common purposes of the Teledrip Enterprise, and because each of the Defendants individually falls within the definition in that section of who can comprise an enterprise.  In support of the allegation that each of the Defendants is associated in fact, they are all owners, officers, employees, and/or other persons who have intentionally directed the actions of Teledrip in furtherance of the Teledrip Enterprise.

6.     The Incidents of Teledrip Corrupt Activity (defined *infra*) include violations of R.C. 2913.05 (Telecommunications Fraud) in connection with the hacking of Drips Holdings' computer systems in Ohio, which hacking was undertaken to steal proprietary technology, software, and data belonging to Drips Holdings, including but not limited to, Drips Holdings' UI, algorithms, AI, and internal campaign building systems.

7.     The hacking was accomplished between March of 2016 and March of 2017, and is demonstrated, *inter alia*, by the Teledrip Enterprise's public use of a work flow system for its services that is a substantively exact copy of Drips ***internal*** campaign building systems, which were not publicly available; this is despite the fact the such work flow system could have been designed literally thousands of different ways.  The hacking was accomplished pursuant to multiple attempts at

either (a) social engineering hacking, or (b) by brute force attack, database exploit, or other hacking method, or by a combination thereof.

8.     The Incidents of Teledrip Corrupt Activity, in addition to injuring Drips Holdings and forming part of the basis for other causes of action complained of herein, were also part of a scheme to defraud customers by causing those customers to believe the Defendants were Drips Holdings or were affiliated with Drips Holdings.

9.     The Defendants intended that these customers rely on their mistaken belief that Defendants were Drips Holdings or were affiliated with Drips Holdings, and those customers did, justifiably, act in such reliance by doing business with Defendants based on such reliance.

10.    This conduct was to the detriment of Drips Holdings, and the described customers because, *inter alia*, those customers purchased inferior services (as further described *passim*) from the Teledrip Enterprise based on the reliance described above.

11.    The Incidents of Teledrip Corrupt Activity include the Teledrip Enterprise contacting consumers in violation of federal law, including in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq*.).  More specifically, such contact, which would otherwise be unlawful, was ostensibly made pursuant to consent.  However, upon information and belief, records to support the

existence of alleged consumer consent were known to the Teledrip Enterprise at the time to be illegitimate, and such alleged consent was known to the Teledrip Enterprise at the time to be ineffective and/or fabricated.

12.     The conduct described in the immediately preceding paragraph is known in the industry as the use of "dirty leads," and the same has the common and foreseeable result of causing diminution to reputation and to good will.

13.     The use by the Teledrip Enterprise of "dirty leads" under the circumstances described in this Complaint (i.e., where the Teledrip Enterprise has sought to intentionally cause consumer confusion between Teledrip and Drips Holdings) has harmed the reputation and goodwill of Drips Holdings.

14.     As a result of Defendants' illegal and bad faith actions, Plaintiff suffered and continues to suffer a loss of the goodwill created in its service marks and brand, as well as lost profits from the sale of products and services diverted to Defendants.  This action seeks permanent injunctive relief and damages against Defendants for willful infringement of Plaintiff's proprietary rights, intellectual property rights and unfair competition against Plaintiff using lies and deception resulting in an enterprise engaged in corrupt activity.

## II.     <u>JURISDICTION AND VENUE</u>

15.     Jurisdiction is proper in the Court pursuant to 18 U.S.C. § 1030, 15 U.S.C. §§ 1117 and 1121, and 28 U.S.C. §§ 1331 and 1338, in that this Complaint

raises federal questions under the CFAA, and United States Trademark Act (Lanham Act), 15 U.S.C. § 1051 *et seq*. Supplemental jurisdiction over the state law claims is proper in this Court pursuant to 28 U.S.C. § 1367.

16. Personal jurisdiction over Defendants is proper because they have purposefully engaged in hacking an Ohio business and used service marks that are confusingly similar to Plaintiff's service mark in Ohio and/or direct or have the right and ability to supervise the infringing activity and maintain a direct financial interest in such activities.

17. Personal jurisdiction over Defendants is also proper because they have purposefully engaged in tortious and deceptive activities directed specifically at Plaintiff, which they know resides in Ohio and feels the effects of Defendants' activities in this state, and these claims arise out of those tortious and deceptive activities.

18. Personal jurisdiction over Defendants is proper because they have purposefully availed themselves of the opportunity to conduct commercial activities in this forum. The Complaint arises out of those commercial activities.

19. Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c) in that substantial injury occurred and continues to occur in this district, a substantial portion of the events that are the subject of this action took place in this district, and Defendants are subject to personal jurisdiction in this district.

## III.  **PARTIES**

20.    DRIPS HOLDINGS LLC is a Delaware limited liability company with its principal place of business in Akron, Ohio.  The company formed in August 2017 and, at that time, succeeded to all the assets (including, but not limited to, intellectual property rights) owned by its parent company, Lead Science LLC.  For the purposes of this Complaint, the business operated prior to August 2017 by Lead Science LLC and after August 2017 by Drips Holdings LLC, referred to herein as "Drips Holdings."

21.    TELEDRIP, LLC is a Delaware limited liability company with, upon information and belief, no established principal place of business.  The Delaware address provided to the Delaware Secretary of State and identified on Teledrip's website as its place of business is actually a single-story clapboard house that is the address of record for Harvard Business Services, Inc., Defendant Teledrip's agent for process of service. Based on the records of the Delaware Secretary of State, Teledrip was formed in or around March 2017.

22.    Upon information and belief, Taylor Murray ("Murray") is an individual, whose place of residence is believed to be in California, and is a founder of Teledrip, who concocted and implemented the unlawful scheme to rip off Drips Holding, to start doing business under the deceptively similar name "drips.io," and

to take the other actions described in this Complaint alone and at times in concert with Defendants Does 1-5.

23. Upon information and belief, Murray has, with the knowledge and consent of Teledrip and the other Defendants, used the alias "DINESH SINGH" in order to convey the false idea to others that such an individual existed and was a founder of Teledrip.

24. Murray collectively owns the vast majority of shares in Teledrip (approximately 85%) and have personally lined his pockets with improperly obtained wealth generated through his ownership in Teledrip and its improper and unlawful business practices, which – upon information and belief – were known to and advocated by him. Upon information and belief, his intent to conduct Teledrip as a fly-by-night operation is exemplified by stripping all profit from Teledrip on a monthly basis rather than investing in growing the company through legitimate means.

25. Defendant Michael C. Laible is an individual residing in Florida, who is the former Chief Revenue Officer/lead salesperson and current Chief Executive Office of Teledrip. Mr. Laible holds himself out on social media as Chief Executive Officer of Teledrip and thus, is a participant in and holds a direct financial interest in the proceeds of Teledrip's unlawful acts described herein.

26.    Defendants John Does 1-5 are sued herein under fictitious names because their true names and capacities are unknown at this time. Upon information and belief, John Does 1-5 are the owners, members, managers, and/or officers of Teledrip, who performed the acts complained of herein and/or had the right and ability to supervise the conduct of those who performed the acts complained of herein.  This Complaint will be amended when their true names and capacities are ascertained.

## IV.    FACTUAL BACKGROUND

### A.    The Drips Business and the Drips Service Marks

27.    Drips Holdings specializes in providing its customers the ability to communicate with consumers through various proprietary means, including sending and receiving text/SMS messages to or from groups or individuals by using a ten-digit phone number and/or short code set-up along with other innovative, proprietary technology-based artificial intelligence methods (the "Drips Services"). The Drips Services assist Drips Holdings' customers capture attention of and maintain relationships with consumers.

28.    Launched in November 2015 with just 4 employees, Drips Holdings now has a staff of more than 50 and handles millions of messages for its clients each day.

29.     Drips Holdings owns and operates a website www.drips.com since at least March 2015.

30.     Since at least February 2016, Drips Holdings has used the following service mark, a logo consisting of stylized letters "d" and "p" evoking droplets:

 (the "Drips Mark")

31.     In addition to the Drips Mark, since at least March 2015, Drips Holdings has advertised itself as "Drips.com." (the "Drips.com" Mark).

32.     Drips Holdings also owns U.S. Reg. No. 5859200 for CONVERSATIONAL SMS in International Class 035 for use in connection with "Advertising and marketing services, namely, promoting the goods and services of other" (the "Conversational SMS Mark").

33.     Collectively, the Drips Mark, the Drips.com Mark, and the Conversational SMS Mark are the "Drips Service Marks."

34.     Since March 2018, Drips Holdings has been and is the owner of the exclusive right, title, and interest in the website www.Drips.com and the Drips Service Marks, with full and exclusive right to bring suit to enforce its trademark rights, including the right to recover for past infringement.

35.     The Drips Service Marks are arbitrary and thus entitled to the maximum trademark protection.

36.     The relevant industry quickly noticed Drips Holdings and the Drips Service Marks because of the novel approach to digital marketing.

37.     Additionally, for several years prior to the events giving rise to this lawsuit, Drips Holdings spent enormous amounts of time, money, and effort advertising and promoting the Drips Service Marks.  To date, Drips Holdings spent more than one million dollars on marketing and promotion of the Drips Service Marks.

38.     Drips Holdings' products and services are advertised at numerous trade shows, in print, and on the Internet using the Drips Service Marks.

39.     For the past three years, Drips Holdings maintains a booth at more than ten trade shows per year.  Drips Holdings' founder and CEO presented to tens of thousands of industry participants at these trades shows, including LeadsCon and Connect to Convert, the largest trade shows in the industry.  Trade shows are an essential promotional tool in the digital marketing industry to develop and cultivate customer leads and sell services.

40.     The Drips Services are advertised, promoted and presented at points of sale online using the Drips Service Marks, including digital advertising, industry blogs, social media, trade conferences, corporate philanthropy events, sponsorships,

client summits, client dinners, client and industry panels/presentations, and promotional videos. In August 2015, Drips Holdings created a video introducing and explaining its pioneering methods and promoted the video using a variety of outlets, including social media, the www.drips.com website, and YouTube found at https://www.youtube.com/watch?v=0twktlHud-w, receiving thousands of views. Customers, accordingly, view the Drips Service Marks in a variety of sale and advertising contexts.

41.     To create and maintain goodwill among its customers, Drips Holdings takes substantial steps to ensure that its products and services are of the highest quality in terms of effectiveness, reliability, and compliance. Drips Services offer the highest return on investment amongst competitors in the SMS marketing field. Drips Holdings invested substantial amounts in its people and systems to ensure Drips Services are available to customers on demand. Drips Holdings maintains high standards of compliance with state and federal statutes governing advertising to consumers.

42.     As a result of its superior services and sales and marketing efforts, Drips Holdings' profitability increased from a few million dollars in revenue in 2017, to breaking eight figures in 2018. A March 31, 2019 article on Inc.com acknowledges that Drips Holdings is "one of the nation's fastest-growing SMS marketing platforms." Drips Holdings was also recently named to the Deloitte Technology Fast

500, an audited list of the 500 fastest growing public and private companies in the technology, media, telecommunications, life sciences, and energy tech sectors; Drips Holdings was named THE fastest growing company in Ohio, 1st in the Midwest and 20th fastest overall in North America. Additionally, Drips Holdings was one of only four privately held companies in the top 100.

43. In August 2019, the founder and CEO of Drips Holdings received praise by leading industry publication DMNews.com as one of the top "40UNDER40" change makers and pioneers in the direct and digital marketing industry and countless unsolicited mentions in the relevant press.

44. Drips Holdings actively polices and enforces its rights in the Drips Service Marks.

45. Based on Drips Holdings' extensive marketing of its brand, the Drips Service Marks have acquired strong secondary meaning so that any product or advertisement bearing such mark is immediately associated by the trade as a product or affiliate of Drips Holdings.

**B. Defendants' Infringing and Improper Conduct**

46. The Contact.io trade show of January 19-20, 2016 in San Francisco, marked Drips Holdings' debut before approximately 500 marketers, entrepreneurs, and technology leaders spanning some of the largest sectors of the economy from financial services, healthcare, home services, professional services, and travel, all

focused on the call marketing ecosystem. Drips Holdings, the talk of the town at the trade show, gained three key accounts as a result of its efforts. Following Contact.io, Drips Holdings received an exponentially greater number of customer inquiries.

47.     As Drips Holdings' popularity grew, so too did the incentive to copy its business format.

48.     The domain name "drips.io" was anonymously registered on or around December 28, 2016.

49.     Defendant Teledrip founded by Defendant=Murray, with a singular goal in mind – ride the coattails of Drips Holdings by offering a hacked version of its UI layout. Rather than develop a brand and marketing, it copied Drips Holding's branding and marketing.

50.     Teledrip launched its business under "Drips.io."

51.     Defendants' infringing actions conceived of, conducted by, and/or overseen by DefendantMurray include hacking, copying or otherwise scraping content directly from Plaintiff's website www.Drips.com, including the similar look and feel of the website, and deploying its copycat website at www.Drips.io.

52.     Indeed, aside from the similar background and color schemes on both websites, the website favicons and trademarks are confusingly similar, with Defendants featuring blue droplets mimicking Drips Service Marks:



53.     Drips Holdings' discovered "Drips.io" in January 2017 and immediately sent a cease and desist letter.

54.     Caught red-handed, Defendants' agreed to stop using the drips.io website via an anonymous email from info@drips.io.

**C.      Teledrip's Evolving Infringement and Failure to Stay a Safe Distance From Drips Holding's Rights**

55.     Defendant Teledrip was founded in or around March 2017 by DefendantMurray with a Chief Executive Officer as the front man to allow for a cloak of anonymity as they operated Teledrip from the shadows.

56.     After the former CEO raised compliance issues and refused to take on questionable accounts, there was a falling out and the former CEO left Teledrip and Defendant Murray promoted another employee, Defendant Michael C. Laible, to the position of CEO to maintain their behind-the-scenes control of the company.

57.     Defendant Teledrip has only a handful of employees, most of whom are the company owners and founders.

58.     Having already gained an unfair advantage in the marketplace through its hacking and copying, Teledrip continued using marketing materials that

mimicked the materials and themes of Drips Holdings. Teledrip's minor changes did not resolve consumer confusion in the marketplace. Teledrip failed to keep a "safe distance" from Drips Holdings and its valuable intellectual property rights and indeed, it continues to encroach unfairly upon those rights.

59.     Teledrip's trade show marketing materials (as illustrated below) are rip-offs of Plaintiff's marketing materials. For example, Defendant Teledrip's booth materials (shown below) include a summary of Plaintiff's 2015 marketing video, only making minor changes like changing "Jane" to "John" and "5:15 pm" to "6 pm" in a sample script.



60.     Multiple customers who view Drips Holdings' booth are confused and believe there is a relationship or association between Drips Holdings and Teledrip.

61.     Teledrip actively encourages the confusion.  For example, Teledrip blatantly outsources technical sales issues to Drips Holdings.  At a trade show in 2017 a Teledrip representative asked a potential customer to go to Drips Holdings for an explanation of API integrations and then return to Teledrip so they could (paraphrasing) "take it from there."

62.     At trade shows attended by both Drips Holdings and Teledrip, Drips Holdings' sales and leads are less than reasonably expected.

63.     Defendants continue to evolve Teledrip's marketing and promotion efforts to ride Drips Holdings' coattails.  For example, at some point between September 9, 2018 and November 6, 2018 and several months after Drips Holdings started use of its CONVERSATIONAL SMS service mark, Teledrip updated its website to prominently include Drips Holdings' CONVERSATIONAL SMS service mark.

64.     Drips Holdings learned in the last year that even after Teledrip transitioned to "Teledrip.com" from "Drips.io," customers remained confused.  For example, a major customer with which Drips Holdings does business – but not gained expected traction – recently informed Drips Holdings that despite management's support, lower-level employees with decision-making authority were doing business with Teledrip because they believe the companies are related.  Absent

Teledrip's interference, Drips Holdings reasonably expected earnings of more than $100,000 per month from this customer alone.

65.     Multiple industry contacts, including a customer and multiple high-level members of one of the most highly regarded professional organizations in the field, informed Drips Holdings that people genuinely think Teledrip is the same as or a related company to Drips Holdings.

66.     The sale and advertising of Teledrip products and services is likely to cause and has in fact caused confusion among consumers regarding Drips Holdings' sponsorship of, affiliation with, connection to, or approval of the products and services sold by Teledrip.

67.     Teledrip's infringing sales and advertising further interfere with Drips Holdings' ability to control the perception of the quality of products and service offerings bearing the Drips Service Marks, which is essential in this heavily regulated and litigated industry.  Upon information and belief, Defendant Teledrip developed a negative reputation in the industry as a "spam mill," which confused consumers and others in the industry and is likely to transfer to Drips Holdings.

68.     Teledrip intentionally, willfully and deliberately uses Drips Holdings' proprietary UI layout, website content and verbiage to mislead and confuse consumers into believing that Teledrip's goods are supported, sponsored or approved by Drips Holdings.

69.     As a result of Teledrip's actions, Drips Holdings is suffering a loss of the enormous goodwill that it created and is losing profits from lost sales of its products and services to Teledrip.

**D.     Teledrip's Interference with Drips Holdings' Customers**

70.     Upon information and belief, because Drips Holdings is the industry leader in its field, customers and potential customers engaging with Teledrip frequently want to know how Teledrip compares to Drips Holdings.

71.     An established element of Teledrip's standard pitch to potential customers includes false statements negatively reviewing Drips Holdings' technological capabilities.

72.     This year, Drips Holdings learned that Teledrip's sales agents, including Defendant Laible, told multiple customers and potential customers of Drips Holdings that (unlike Teledrip) Drips Holdings does not use AI (artificial intelligence) or any real technology and instead relies entirely on overseas human call centers (which have a pejorative connotation in the marketing field). These statements are false.

73.     Because of Teledrip's prior infringing use of "Drips.io" and continued use of the hacked UI layout, copycat marketing materials, industry participants (including customers and competitors, members of professional organizations) believe there is or was at one time a relationship between Teledrip and Drips

Holdings that would lend credibility to Teledrip's statements regarding Drips Holdings' technology.

74.    There is no factual basis for Teledrip to make any statements regarding Drips Holdings' technology, let alone the blatantly false statements Drips Holdings learned it is making.

75.    Teledrip successfully used false statements comparing Teledrip's and Drips Holdings' technology to convince Drips Holdings' customers and potential customers to hire Teledrip instead of Drips Holdings.  Murray even used the alias "Dinesh Singh" to promote Teledrip.

76.    For example, one existing customer of Drips Holdings tested Teledrip's services recently, during which time Drips Holdings' volume for that client was cut in half.  Even though the customer returned to Drips Holdings, Drips Holdings lost an estimated $20,000.  Upon information and belief, this customer tested Teledrip's services due to Teledrip's false statements regarding Drips Holdings.

77.    As a result of Teledrip's actions, Drips Holdings is suffering a loss of the enormous goodwill and is losing profits from lost sales and lost potential sales of its products and services.

78.    Defendants are likely to continue to commit the acts complained of herein, and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm.

## V. CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (Computer Fraud and Abuse Act under 18 U.S.C. § 1030 against all Defendants)

79. Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

80. The actions of Defendants described above and specifically, without limitation, their unauthorized access to fraudulently acquire valuable information, i.e., proprietary UI layout consisting of an AI-assisted SMS lead generation services, from a protected computer ("hacking") pursuant to 18 U.S.C. § 1030.

81. Plaintiff recently discovered the hacking and therefore meets the two-year statute of limitations.

82. Jurisdictional requirements are met because the targeted computer regularly transmits interstate e-mails, regardless of Defendants' physical location while committing the culpable acts.

83. Plaintiff meets the $5,000 in loss requirement. Loss includes any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of services.

84. Pursuant to 18 U.S.C. § 1030, Plaintiff is entitled to compensatory damages or injunctive relief.

## SECOND CAUSE OF ACTION

## (Federal Trademark Infringement under 15 U.S.C. §1125(a) against all Defendants)

85. Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

86. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the Drips Service Marks, and confusingly similar variations thereof, in commerce to advertise, promote, market, and sell Teledrip services and products throughout the United States, including Ohio, constitute trademark infringement in violation of 15 U.S.C. § 1125(a).

87. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of the goodwill associated with the Drips Service Marks, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

88. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover damages in an amount to be determined at trial, ill-gotten profits made by Defendants on sales of product and services that were based on the Drips Holdings Service Mark and content, and the costs of this action. Furthermore, Plaintiff is informed and believes,

and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (Federal Unfair Competition and False Advertising under 15 U.S.C. §1125(a) against all Defendants)

89.     Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

90.     Defendants' actions described above and specifically, without limitation, Defendants' use of the Drips Service Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell Teledrip's services throughout the United States, including Ohio; their use of misleading "comparison reviews"; and their misrepresentations regarding the Drips Services services, constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

91.     Defendants' representations regarding Plaintiff's products and services are made in interstate commerce.

92.     Defendants' representations regarding Plaintiff's products and services are material to customers' purchasing decisions.

93.    A significant portion of consumers are likely to be misled and deceived by Defendants' representations regarding Plaintiff's products and services.

94.    Defendants knew or should have known that their statements were false or likely to mislead.

95.    As an actual and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

96.    Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of products and services that were rip-offs of the Drips Holdings products and services, as well as recovery of the costs of this action.

97.    Furthermore, Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

## (Statutory Unfair Competition and False Advertising under Ohio Revised Code §§ 4165.01 *et seq*. against all Defendants)

98.     Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

99.     Defendants' actions described above and specifically, without limitation, Defendants' use of the Drips Service Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell Teledrip's services throughout the United States and Ohio; their use of misleading "comparison reviews"; and their misrepresentations regarding Plaintiff's products and services, constitute trademark infringement, false advertising, and unfair competition in violation of the laws of the State of Ohio.

100.    By these actions, Defendants have engaged in false advertising and unfair competition in violation of the statutory laws of the state of Ohio, Ohio Rev. Code §§ 4165.01, *et seq*., and, as a result, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

101.    As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable harm.

## FIFTH CAUSE OF ACTION

### (Tortious Interference with Business Relationships under Ohio common law against all Defendants)

102.   Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

103.   The actions of Defendants described above and specifically, without limitation, Defendants' use of the Drips Service Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell Teledrip's services throughout the United States and Ohio; their use of misleading "comparison reviews"; and their misrepresentations regarding Plaintiff's products and services, constitute tortious interference with business relationships under Ohio common law.

104.   Defendants knew of Drips Holdings' existing and prospective business relationships and intentionally directed their behavior to those customers, as shown by the way in which they intentionally and falsely positioned Teledrip as either the "same as" or possessing superior technology to Drips Holdings.

105.   Defendants have no justification for the infringing use of the Drips Service Marks by Teledrip or Teledrip's false and misleading statements to customers or privilege to do so.

106.   As a proximate and direct result of Defendants' false and misleading statements, Defendants have prevented Drips Holdings from forming contracts with potential customers and caused other contracts to be terminated.

107.   The actions of Defendants, if not enjoined, will continue.  Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Drips Service Mark, and injury to Plaintiff's business.

108.   On information and belief, the actions of Defendants described above were and continue to be deliberate and malicious.

## SIXTH CAUSE OF ACTION

### (Business Disparagement under Ohio common law againstTeledrip and Michael C. Laible)

109.   Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

110.   The actions of Teledrip and Mr. Laible described above and specifically, without limitation, their use of misleading and disparaging "comparison reviews" and their disparaging misrepresentations regarding Plaintiff's products and services, constitute business disparagement under Ohio common law and places Plaintiff in a false light.

111.   Teledrip and Mr. Laible knew of Drips Holdings' existing and prospective business relationships and intentionally directed their behavior to those customers, as shown by the way in which they intentionally and falsely positioned Teledrip as either the "same as" or possessing superior technology to Drips Holdings.

112. Teledrip and Mr. Laible have no factual basis or justification for Teledrip's false and misleading statements to customers.

113. As a proximate and direct result of Teledrip and Mr. Laible's disparaging statements, they have prevented Drips Holdings from forming contracts with potential customers and caused other contracts to be terminated.

114. The disparaging actions of Teledrip and Mr. Laible, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Drips Service Mark, and injury to Plaintiff's business.

115. The actions of Teledrip and Mr. Laible described above were and continue to be deliberate and malicious.

## SEVENTH CAUSE OF ACTION

### (Deceptive Trade Practices under Ohio Statutory Revised Code §§ 4165.02 *et seq*. and common law against all Defendants

116. Plaintiff hereby incorporates by reference all prior allegations as though fully set forth herein.

117. Defendants' acts constitute deceptive trade practices by passing off Teledrip's services as Drips Holdings' services and creating a likelihood of confusion as to the source of the services, in violation of Ohio Deceptive Trade Practices Act, O.R.C. § 4165.02 and Ohio common law. Plaintiffs are entitled to damages and attorneys' fees.

118. Defendants' acts greatly and irreparably damage Plaintiffs and will continue to cause damage unless restrained by this Court. Plaintiff is without an adequate remedy at law.

## EIGHTH CAUSE OF ACTION

### Engaging in a Pattern of Corrupt Activity (Ohio Civil RICO) Ohio Statutory Revised Code §§ 2923.32 & 2923.34 against all Defendants

119. All prior paragraphs in this Complaint are hereby incorporated by reference.

120. For purposes of this Complaint, "Teledrip Enterprise" means each of the Defendants collectively, including the John Does.

121. The Teledrip Enterprise constitutes an "enterprise" within the meaning of R.C. 2923.31(C) because each of the Defendants is associated in fact and have worked in coordination in furtherance of common purposes of the Teledrip Enterprise, and because each of the Defendants individually falls within the definition in that section of who can comprise an enterprise. In support of the allegation that each of the Defendants is associated in fact, they are all owners, officers, employees, and/or other persons who have intentionally directed the actions of Teledrip in furtherance of the Teledrip Enterprise.

122. The Teledrip Enterprise has engaged in two or more incidents of "corrupt activity," as that term is defined by R.C. 2923.31(I), and thus the Teledrip Enterprise has engaged in a "pattern of corrupt activity" as that term is defined by

R.C. 2923.31(E). Each such incident of corrupt activity is hereinafter referred to as an "Incident of Teledrip Corrupt Activity," and collectively as the "Teledrip Corrupt Activity."

123. Each of the Defendants has participated in some or all Incidents of Teledrip Corrupt Activity, and thus each has collectively participated in the Teledrip Corrupt Activity.

124. The Incidents of Teledrip Corrupt Activity include violations of R.C. 2913.05 (Telecommunications Fraud) in connection with the hacking of Drips Holdings' computer systems in Ohio, which hacking was undertaken to steal proprietary technology, software, and data belonging to Drips Holdings, including but not limited to, Drips Holdings' UI, algorithms, AI, and internal campaign building systems.

125. The hacking was accomplished between March of 2016 and March of 2017, and is demonstrated, *inter alia*, by the Teledrip Enterprise's public use of a work flow system for its services that is a substantively exact copy of Drips **internal** campaign building systems, which were not publicly available; this is despite the fact the such work flow system could have been designed literally thousands of different ways. The hacking was accomplished pursuant to multiple attempts at either (a) social engineering hacking, or (b) by brute force attack, database exploit, or other hacking method, or by a combination thereof.

126. The Incidents of Teledrip Corrupt Activity described by the two immediately preceding paragraphs, in addition to injuring Drips Holdings and forming part of the basis for other causes of action complained of herein, were also part of a scheme to defraud customers by causing those customers to believe the Defendants were Drips Holdings or were affiliated with Drips Holdings.

127. The Defendants intended that these customers rely on their mistaken belief that Defendants were Drips Holdings or were affiliated with Drips Holdings, and those customers did, justifiably, act in such reliance by doing business with Defendants based on such reliance.

128. This conduct was to the detriment of Drips Holdings, and the described customers because, *inter alia*, those customers purchased inferior services (as further described *passim*) from the Teledrip Enterprise based on the reliance described above.

129. The Incidents of Teledrip Corrupt Activity described above also constituted violations of 18 U.S.C. § 1832 (i.e., theft of trade secrets), which violations are within the definition of "racketeering activity" located at 18 U.S.C. § 1961(1)(B), and are therefore instances of "corrupt activity" pursuant to R.C. 2923.31(I)(1).

130. More specifically, when the Teledrip Enterprise hacked into Drips Holdings' computer system, their intent was to convert Drips Holdings' proprietary

UI layout consisting of an AI-assisted SMS lead generation system to its own benefit, knowing that the same would injure Drips Holdings.

131.   Drips Holdings' proprietary layout consisting of an AI-assisted SMS lead generation system is a trade secret within the meaning of 18 U.S.C. § 1832.

132.   The Teledrip Enterprise's conduct in variously conspiring, attempting, and accomplishing the hacking of Drips Holdings' computer system, and then receiving and possessing Drips Holdings' trade secrets through the hacking, specifically violated each of 18 U.S.C. § 1832(a)(1), (2), (3), (4), and (5).

133.   The Incidents of Teledrip Corrupt Activity also included violations of 18 U.S.C. § 1343 (i.e., federal wire fraud).   The Incidents of Teledrip Corrupt Activity include the Teledrip Enterprise contacting consumers in violation of federal law, including in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq*.).   More specifically, such contact, which would otherwise be unlawful, was ostensibly made pursuant to consent.   However, upon information and belief, records to support the existence of alleged consumer consent were known to the Teledrip Enterprise at the time to be illegitimate, and such alleged consent was known to the Teledrip Enterprise at the time to be ineffective and/or fabricated.

134.   The conduct described in the immediately preceding paragraph is known in the industry as the use of "dirty leads," and the same has the common and foreseeable result of causing diminution to reputation and to good will.

135. The use by the Teledrip Enterprise of "dirty leads" under the circumstances described in this Complaint (i.e., where the Teledrip Enterprise has sought to intentionally cause consumer confusion between Teledrip and Drips Holdings) has harmed the reputation and goodwill of Drips Holdings.

136. Each of the Defendants is employed by, and/or associated with, the Teledrip Enterprise.

137. Because of the foregoing, each of the Defendants has engaged in the affairs of the Teledrip Enterprise through a pattern of corrupt activity within the meaning of R.C. 2923.32, and has violated subsection (A)(1) thereof.

138. Upon information and belief, the Defendants have also violated R.C. 2923.32(A)(2) because they have acquired or maintained interest or control in the Teledrip Enterprise through a pattern of corrupt activity, including the Teledrip Corrupt Activity.

139. Upon information and belief, the Defendants have also violated R.C. 2923.32(A)(3) because they have received proceeds from the Teledrip Corrupt Activity, and have used the proceeds of same to acquire right, interest, or equity in real property or in the establishment or operation of the Teledrip Enterprise.

140. As stated above, some of the Incidents of Teledrip Corrupt Activity include violations of R.C. 2913.05 and 18 U.S.C. § 1832, and Drips Holdings is a person who has been injured or threatened with injury by the Defendants violation of

R.C. 2923.32. Drips Holdings is therefore permitted, pursuant to R.C. 2923.34(A),

to bring this civil claim seeking relief from the Defendants for the Teledrip Corrupt Activity.

## NINTH CAUSE OF ACTION

## Misappropriation of Trade Secrets Ohio Statutory Revised Code §§ 1331.61 – 1333.69 against all Defendants

141. All prior paragraphs in this Complaint are hereby incorporated by reference.

142. The hacking of Drips Holdings' computer systems, as more specifically described in the Eighth Cause of Action, constituted "improper means" within the meaning of R.C. 1333.61(A) because it was accomplished through theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

143. The information obtained by Defendants from the hacking of Drips Holdings' computer systems, as more specifically described in the Eighth Cause of Action, including Drips Holdings' proprietary technology, software, and data, such as Drips Holdings' UI, algorithms, AI, and internal campaign building systems, constitute "trade secrets" within the meaning of R.C. 1333.61(D) because that information derives independent economic value from not being generally known to (or readily ascertainable by proper means by) persons other than Drips Holdings,

and because that information is and was the subject of efforts that were reasonable under the circumstances to maintain its secrecy.

144.   Defendants' conduct in hacking Drips Holdings' computer system and acquiring its information, as more specifically described in the Eighth Cause of Action, therefore constituted "misappropriation" of Drips Holdings' trade secrets, within the meaning of R.C. 1333.61(B).

145.   Defendants' misappropriation, as described herein, has caused actual damages to Drips Holdings, including but not limited to diminution of its good will and its business advantages.

146.   Defendants' misappropriation, as described herein, was willful and malicious within the meaning of R.C. 1333.63, thereby justifying punitive damages, and justifying attorney's fees pursuant to R.C. 1333.64(C).

## VI.   PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment against Defendants as follows:

A.   That Plaintiff be granted injunctive relief under 15 U.S.C. § 1051 *et seq.*; Ohio Revised Code § 4165.03 and Ohio common law; specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

1.   hacking any of Drips Holdings computers;

2. using the Drips Service Marks, or any mark confusingly similar to the Drips Service Marks, in connection with the marketing, promotion, advertising, sale, or distribution of any Teledrip products or services;

3. directly or indirectly engaging in false advertising or promotion of Teledrip products and services;

4. making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation or distribution of Teledrip products by making false representations regarding Plaintiff's products and services; and

5. directly or indirectly engaging in deceptive trade practices by passing off and creating a likelihood of confusion.

B. That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

C. That Defendants be ordered to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of

either Teledrip products vis-a-vis Plaintiff's Drips Service Marks products, including without limitation:

1. Delete all hacked material from its website;

2. the sending of a registered letter (with a copy to Plaintiff) to all internet search engines, including but not limited to, Google and Yahoo!, requesting that Defendants' keyword advertising and sponsored advertisements be removed from their search engines;

3. the placement of corrective advertising on Defendants' websites informing consumers of their prior misrepresentations regarding Plaintiff's products and including the affirmative disclaimer that Teledrip is not affiliated with Drips Holdings;

4. the removal of all false and misleading "comparison reviews" of Plaintiff's product from websites containing such reviews;

D. That Defendants be adjudged to have violated 18 U.S.C. § 1030 by unauthorized access to a protected computer;

E. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading descriptions or representations of fact that misrepresent the nature, quality, and characteristics of Plaintiff's products and services;

F.      That Defendants be adjudged to have unlawfully and unfairly competed against Plaintiff under the laws of the State of Ohio, Ohio Revised Code § 4165.01, *et seq*.;

G.      That Defendants be adjudged to have tortiously interfered with Plaintiff's business relationships under Ohio common law;

H.      That Defendants be adjudged to have engaged in deceptive trade practices of passing off and creating a likelihood of confusion.

I.      That Plaintiff be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Defendants' false and misleading conduct and statements;

J.      That Plaintiff be awarded Defendants' profits derived by reason of said acts, or as determined by said accounting;

K.      That such damages and profits be trebled and awarded to Plaintiff and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

L.      That Plaintiff be awarded damages in an amount sufficient to compensate it for the damage caused by Defendants' unfair competition and false advertising under Ohio Revised Code § 4165.01, *et seq*. and tortious interference with business relationships and business disparagement under Ohio common law;

and deceptive trade practice pursuant to ORC § 4165.02, *et seq*. and Ohio common law.

M.   The Plaintiff be granted punitive damages for Defendants' malicious acts;

N.   That Plaintiff be granted pre-judgment and post-judgment interest;

O.   That Plaintiff be granted costs associated with the prosecution of this action;

P.   That Plaintiff be granted such further relief as the Court may deem just.

## VII.   <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all triable issues of fact.

*/s/ Helen Mac Murray*
Helen Mac Murray (#38783)
Lisa A. Messner (#74034)
MAC MURRAY & SHUSTER LLP
6525 W. Campus Oval, Suite 210
New Albany, Ohio 43054
T:   614.939.9955
F:   614.939.9954
E:   hmacmurray@mslawgroup.com
     lmessner@mslawgroup.com

*Counsel for Plaintiff*
