Carmine R. Zarlenga
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 263-3000
czarlenga@mayerbrown.com

Bennet Kelley
INTERNET LAW CENTER
100 Wilshire Blvd., Suite 940
Santa Monica, CA 90401
Telephone: (310) 452-0401
Facsimile: (702) 924-8740
bkelley@internetlawcenter.net

Attorneys for Avarus

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| DRIPS HOLDINGS, LLC,<br>Plaintiff,<br><br>vs.<br><br>TELEDRIP LLC, f/k/a DRIPS.IO, et al.,<br>Defendant. | Case No.: 5:19-CV-02789<br><br>Judge John R. Adams<br><br>**THIRD-PARTY AVARUS' REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO QUASH OR MODIFIY DEFENDANT TELEDRIP, LLC'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO NAMECHEAP, INC. AND/OR FOR A PROTECTIVE ORDER** |

Third-party Avarus, submits this Reply Brief in further support of its motion for an Order pursuant to Rule 45(d)(3) quashing or modifying Defendant Teledrip, LLC's subpoena to third-party Namecheap, Inc. involving Avarus' confidential and proprietary information, or, in the alternative, for a protective order pursuant to Rule 26(c).

Avarus filed its Motion to Quash since (i) the Teledrip, LLC ("Teledrip")  subpoena

improperly sought highly proprietary information about its clients and other third parties that had no bearing on the issue of redirection of the drips.cm domain; and (ii) Namecheap, Inc. was not affording Avarus the opportunity to designate documents under the Protective Order prior to their production.

Teledrip's Opposition asks the Court to uphold a subpoena completely different than the one actually served upon Namecheap, as it repeatedly mischaracterizations and glosses over the broadness of the subpoena requests at issue. As detailed below, each of the arguments asserted must be rejected in their entirety.

### A. Avarus' Concerns Are Not Addressed by the Protective Order

Teledrip misses the point when it contends that "[a]ny concerns Avarus may have can be, and already are appropriately addressed by the Protective Order with which it was provided almost a month ago." (Opp. at 3.) The subpoena is addressed to and production would be made by Namecheap, Inc., not Avarus. As indicated in Avarus' motion, "[t]he existence of the Protective Order in this matter does not fully protect Avarus here since Namecheap has not allowed the ability to designate documents under the Protective Order." (*See* Declaration of Bennet Kelley at ¶ 8.) That is why Avarus included in its Proposed Order a provision giving it the opportunity "to review and designate all documents in accordance with the Protective Order dated April 2, 2020." Absent this motion, Namecheap, Inc. would have produced Avarus' documents *without* any designation.

### B. Request Three: Teledrip Ignores the Request's Plain Language

In its Opposition, Teledrip contends it is "only asking for the name and address of the person billed in this Subpoena Request." (Opp. at 5.) This is an incredulous assertion when just a few lines above, Teledrip quotes the language of the request seeking "[a]ll documents that refer or relate to the billing information of the [Avarus] account, ***including, but not limited, to***" the name and address of the person billed. (Emphasis added.) If Teledrip merely wants the name

and address of the person billed, Avarus has no objection to providing this information but must point that the request seeks far more than that.

### C. Request Four: Teledrip's "Expose Everything" Theory Fails

Teledrip's theory for Subpoena Request No. 4 is that the court must require the exposure of every IP address associated with the account in order to show that none of them belong to Teledrip. This is akin to arguing that a third-party must disclose its entire customer list to prove that the requesting party is not a customer rather than limiting the request to documents relating to the subpoenaing party.

As explained in Avarus' motion, Request No. 4 would expose the IP addresses associated with Avarus, Avarus' employees and contractors, and also its clients who access the account to utilize its DNS service – information that Avarus views as a trade secret. (Declaration of Adam Young at ¶¶ 7, 11.) *Ellora's Cave Pub, Inc.*, is distinguishable from this case, as Avarus is not objecting to disclosure of the IP address of the account holders, but rather the unnecessary disclosure of third-party information.

Had Teledrip instead asked for documents relating to the set of IP addresses controlled by Teledrip, Avarus would have no objection and suspects that there would be no such documents. Teledrip, however, chose not to make such a tailored request and is instead seeking this burdensome "expose everything" approach.

As indicated in Avarus' opening brief, once a party can demonstrate that a subpoena calls for trade secret or confidential information, the burden then falls upon the requesting party to demonstrate that the "information is both relevant and necessary to the pending action." *Allen v. Howmedica Leibinger, Inc.,* 190 F.R.D. 518, 525 (W.D. Tenn. 1999). "[T]he court must [then] balance the need for the information against the possible harm of disclosure." *Id.*

Teledrip has failed to meet this burden. Its analysis is backwards since it is the absence of a Teledrip login record, not the presence of other unrelated parties, that is relevant and that is all that should be disclosed.

### D. Request Five: Teledrip's Attempt to Recast the Request Fails

Teledrip's defense of Subpoena Request No. 5 is a trifecta of misdirection. Teledrip's own characterization of the request is that it would reveal "the history of an account that shows logins or other tasks."[1] As explained throughout the Motion to Quash, however, this would "would ensnare every activity taken under Avarus' account for all of its clients, 99.99% of which would be unrelated to the "drips.cm" DNS services." Yet, Teledrip would have this court believe that it would only reveal the "true account holder identity".

Teledrip next contends that this is necessary to identify the party involved in the redirect of the drips.cm to Teledrip.com, but this is covered by Request No. 7 for which Avarus' only objection is that it be able to designate it as "Confidential" under the Protective Order.[2]

Teledrip also tries to claim that Avarus is not the true account holder and, without any basis, claims that "Avarus is clearly refusing to produce these materials in order to protect the identity of the account holder on the day that the subpoena was served". (Opp. at 6.) It is true that Avarus was recently reincorporated, but this was only due to the fact that its predecessor entity of the same name was administratively dissolved. (*See* Supplemental Declaration of Adam Young at ¶ 2 (hereinafter "Young Supp. Decl.").) An Avarus entity and its leadership have paid for and managed this account from its inception. (*Id.* at ¶ 3.)

---

[1] Teledrip curiously then cites to a Google definition of "change history" for Google Ads, which has absolutely nothing to do with Namecheap or domain accounts.

[2] Document Request No. 7: "All documents that refer or relate to the creation of the URL redirect from drips.cm to Teledrip.com, including, but not limited to, the FreeDNS setup timestamps and/or logs."

### E. Request Eight: Teledrip Cannot Rewrite the Request in its Opposition

Subpoena Request No. 8 is the most overly broad of the subpoena requests, since it seeks the following:

*All documents that refer or relate to any and all Namecheap accounts that utilize the same IP address(es) as the Namecheap account associated with the FreeDNS domain "drips.cm."*

The Request is specifically addressed to the "Namecheap account associated with the FreeDNS domain 'drips.cm.'"  As stated in Avarus' motion this would require disclosure of "the Namecheap accounts (based on IP address) for any party accessing the Avarus Namecheap account whether they be current or former employees, contractors or clients and regardless of whether these other accounts have anything remotely to do with DNS services in general or the drips.cm domain specifically."

In its Opposition, Teledrip attempts to recasts this broad request as instead merely seeking "other accounts that have utilized the same IP address as www.drips.cm", when that is not what the request says at all. The request instead seeks *all accounts of anyone who has accessed Avarus' Namecheap account at any time*.  The time for rewriting this overly broad request was prior to service and not in its Opposition to a Motion to Quash and the court must ignore this mischaracterization.

### F. Avarus Concedes That Teledrip Is Not Responsible for the Redirect of Drips.cm

Teledrip contends that all this intrusive discovery is necessary to prove that it is not responsible for redirecting drips.cm to Teledrip.com.  Such discovery, however, is unnecessary when Avarus concedes that it is the account holder for the DNS service provider relating to

drips.cm and has agreed to accept service through its counsel if necessary. (Kelley Decl., Ex. 1D at 4.) Avarus also has acknowledged that the redirection of drips.cm to teledrip.com was via its DNS service due to an unfortunate error and has communicated this to both Plaintiff Drips Holdings, LLC and Teledrip. (Young Supp. Decl. at ¶ 4.) Nonetheless, Teledrip insists on pursuing this overly broad subpoena, without attempting to accommodate Avarus' legitimate concerns to pursue a point that is not in question.

## CONCLUSION

Each of Teledrip's arguments are based on mischaracterizations of fact and the actual language of its overly broad subpoena requests. As outlined above, each of these arguments should be rejected.

Avarus has demonstrated good faith in asserting that it is willing to permit production of certain relevant information provided it can have the opportunity to designate Namecheap's production in accordance with the Protective Order, while asking the Court to block release of information regarding third parties that is unrelated to this litigation.

For the reason stated above, in Avarus' initial motion and in any argument that may occur on this motion, Avarus respectfully requests that this Court quash the Teledrip subpoena and/or limit discovery to require that Namecheap only provide documents sufficient to identify (i) the account holder; and (ii) transaction history in connection with DNS services for drips.cm; while also permitting Avarus time to review and designate all documents in accordance with the Protective Order.

Dated:  July 12, 2020

Respectfully submitted,

**INTERNET LAW CENTER**

BY /s/ bennet g. kelley

Bennet Kelley
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401

Carmine R. Zarlenga
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006

Attorneys for Third-Party Avarus

## CERTIFICATE OF SERVICE

I certify that on July 12, 2020, THIRD-PARTY AVARUS' REPLY BRIEF IN FURTHER SPPORT OF ITS MOTION TO QUASH OR MODIFIY DEFENDANT TELEDRIP, LLC'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO NAMECHEAP, INC. AND/OR FOR A PROTECTIVE ORDER was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record.

I further certify that a copy was also served on Namecheap, Inc. as follows:

Namecheap, Inc.
Legal & Abuse Department
4600 E. Washington Street
Suite 305
Phoenix, Arizona 85034
(via email to legal@namecheap.com)

/s/ bennet g. kelley

Bennet G. Kelley