UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DRIPS HOLDINGS, LLC, <br><br>        Plaintiff, <br><br>vs. <br><br>TELEDRIP LLC, f/k/a/ DRIPS.IO ,et al. <br><br>        Defendant. | CASE NO. 5:19-cv-02789-JRA <br><br>JUDGE JOHN R. ADAMS <br><br>MAGISTRATE JUDGE CARMEN E. HENDERSON <br><br>**PLAINTIFF'S <u>EMERGENCY</u> MOTION FOR A PROTECTIVE ORDER** |

Plaintiff Drips Holdings, LLC ("Drips"), moves for emergency relief in the form of a protective order under Federal Rule of Civil Procedure 26(c) preventing Defendant Teledrip, LLC ("Teledrip") from taking further action with respect to seven subpoenas duces tecum that expressly seek Drips' protected work product from Drips' clients, potential clients, and important persons in the industry – creating the prospect of imminent, irreparable harm. Drips cannot rely on Teledrip's hollow assurances to work with Drips on this issue because, as Drips discovered yesterday, Teledrip has not followed through with its prior agreement to suspend execution of the subpoenas. Accordingly, Drips requires an Order from this Court mandating that Teledrip address these serious issues immediately. The subpoenas have a return date of March 5, 2021, and Drips has no way to control the timing or content of respondents' productions, necessitating

this request for emergency relief.[1]

## I. Relevant Background

In Teledrip's first set of written discovery requests, served April 22, 2020, it demanded:

1. All documents that refer or relate to any communications between you and any other person (not acting as your attorney) regarding the existence or nature of this Action or the claims asserted in this Action.

2. All documents that refer or relate to any communications between your present or prior attorneys with any non-party regarding the existence or nature of this Action or the claims.

Declaration of Christina J. Moser at ¶ 3. In its responses to these document requests (and similar interrogatories and document requests), Drips objected as follows:

> Plaintiff further objects that this request expressly seeks information that is protected from discovery by the work product doctrine and the attorney client privilege and appears designed to elicit information regarding Plaintiff's litigation strategy in this case. The "existence or nature" of this action is not itself relevant to any claim or defense currently pleaded. Plaintiff will not allow Defendant to use written discovery as a shortcut to discovery of Plaintiff's counsel's thoughts and strategies. The request also seeks communications that are subject to the spousal privilege. The request, moreover, is grossly overburdensome and intrusive to the extent Defendant purports to require Plaintiff to provide a privilege log for documents created after Plaintiff sought legal advice for the purpose of pursuing this action. Such a privilege log would require thousands of entries and daily updating and, moreover, counsel for Defendant has not undertaken to provide a log of all of their activity and communications in which they have engaged in furtherance of this lawsuit. Furthermore, identification of persons that Plaintiff and its counsel spoke with regarding this dispute, let alone the content of those communications, will disclose Plaintiff's litigation strategy. Due to the burden of logging the protected documents created since Plaintiff's decision to pursue claims against Defendant and the limited relevance of such documents to any issue in this case, Plaintiff objects to, and will not be, providing a privilege log for documents created after it sought legal advice to commence this action.

*Id*. Drips further responded:

---

[1] Because the identities of the non-party industry witnesses have been designated Confidential pursuant to the Protective Order to maintain their personal privacy, the Declaration of Aaron Christopher Evans and Exhibits A & D fare filed under seal. A redacted version of the documents will be filed later today.

> Notwithstanding and subject to the foregoing objections as well as Plaintiff's Objections to Defendant's Definitions and Instructions, Plaintiff has, and will continue to, identify in its Fed. R.Civ. P. 26(a) disclosures those persons likely to have discoverable information that Plaintiff may use to support its claims or defenses. Plaintiff also will disclose the documents it anticipates relying upon at trial and those non-privileged documents that are responsive to an appropriate discovery request directed to the facts underlying the claims and defenses pleaded in this action, but Plaintiff will not produce documents for the sole purpose of identifying other potential witnesses with whom it might have had confidential discussions, nor the content of any confidential discussions with any witnesses or potential witnesses. Plaintiff is producing herewith copies of the form document preservation letter sent by counsel for Drips to persons believed to possess relevant information regarding this dispute, as well as a chart identifying those persons, including the company name, address, date mailed and certified mail tracking number. Communications with Chris Moreira, John Budd, Ryan Kauffman, and their respective counsel, to the extent not privileged or work product, will be produced as well. Plaintiff will use reasonable efforts to provide the foregoing documents by June 22, 2020, but reserves the right to produce additional documents as they are identified and/or located. No further response or privilege log will be provided.
>
> *Id*.

When Teledrip raised concerns about Drips' responses a month later (ironically, objecting that the responsive, non-work product documents produced by Drips were irrelevant), Drips explained in detail, with legal citations, why the requests were not discoverable and stated its continued objection to Teledrip's "repeated attempts to delve into privileged areas" which were "another manner in which its discovery requests are abusive." *Id*. at ¶ 4. The parties held a meet and confer discussion in August, during which Drips again stated the bases for its objections, which it would not withdraw. *Id*. Teledrip has never sought to compel responses. *Id*.

Other than written discovery requests to Drips and subpoenas directed at the "drips.cm" web host and domain holder, Teledrip had conducted no discovery in the fifteen months this case has been pending. *Id*. at ¶ 5. When Drips attempted to reschedule the Teledrip depositions and request Teledrip's availability for non-party depositions in January, Teledrip asked Drips to

3

jointly request a four-month extension of discovery, claiming that it wanted to explore settlement. *Id*  On January 28, 2021 Drips agreed to an extension provided, among other things, Teledrip provide an opening settlement proposal – which Teledrip agreed to provide by February 12, 2020. *Id*  During the February 17, 2021 status conference, Teledrip represented it would provide the letter that week, and the parties agreed to notify the Court by March 1 whether mediation was feasible at this stage. *Id*  Teledrip still has not provided the letter. *Id*

However, the day after the Court granted the discovery extension, on Thursday, February 18, 2021 at 4:13 pm, Teledrip provided notice via email that it was serving eleven subpoenas duces tecum on individuals and businesses located across the United States. *Id.* at ¶ 6; Exhibit A (Transmittal Email and Subpoenas); Exhibit D (Summary of Subpoenas).  Seven of those subpoenas included one or more of the following requests:

> All documents that refer or relate to the above captioned litigation or your actual or potential involvement as a witness in the above captioned litigation, including but not limited to all emails between you and a @drips.com email address regarding these topics

> All documents that refer or relate to communications between you and Mac Murray & Shuster, LLP, between you and Baker & Hostetler LLP, and between you and Litvak Law Group.

*Id.*  A third request, which is not directed to work product but is grossly overbroad, is, "All documents that refer or relate to Teledrip LLC." *Id.*

Shortly after reviewing the contents of the subpoenas, Drips notified Teledrip of its objections to the subpoenas on the ground that they were duplicative of discovery requests to which Drips had already objected and expressly sought work product, and demanded that Teledrip confirm that it would immediately withdraw the subpoenas.  Moser Decl. at ¶ 7; Exhibit B.  Absent such confirmation, Drips stated it would seek immediate relief from the Court to protect itself and the non-party witnesses.  *Id.*

4

The parties exchanged additional emails on Friday, February 19, 2021 and, in a telephone call that afternoon, Teledrip agreed to suspend service of the seven subpoenas to which Drips objected until the parties could agree on a process for addressing Drips' work product concerns. Moser Decl. at ¶ 8. On Tuesday, Drips responded in detail to assertions by Teledrip that work product was inapplicable to the requested documents and proposed a framework for allowing Drips an opportunity to review and redact non-party documents containing work product. *Id.*

On Wednesday, Drips received a call from one of the persons named in the objected-to subpoenas who was upset over having just been personally served with the subpoena. Declaration of Aaron Christopher Evans at ¶ 3. Drips emailed Teledrip's team of lawyers requesting confirmation that service had been suspended in accordance with the parties' agreement and demanding the identity of all persons who had been served with the February 18 subpoenas. Moser Decl. at ¶ 9. Teledrip has not provided that information. *Id*.

The return date for the subpoenas is March 5, 2021, creating a need for expedited consideration of Drips' motion. *See* Exhibit A.

## II. Relevant Law

According to Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena that does not allow a reasonable time to comply, requires compliance beyond specific geographical limits, requires disclosure of privileged or other protected matter, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). The court may also consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case.'" R*ecycled Paper Greetings, Inc. v. Davis*, 2008 WL 440458, at *2 (N.D. Ohio Feb.13, 2008) (quoting *Bogosian v. Woloohojian*

*Realty Corp.*, 323 F.3d 55, 66 (1st Cir.2003) (citing cases)). The moving party bears the burden of showing that the subpoena violates Rule 45. *Id*. at *3. Ordinarily, a party has no standing to oppose a subpoena issued to a non-party – unless the party can demonstrate a claim of privilege or personal right in the documents sought. *Donahoo v. Ohio Dept. of Youth Servs*., 211 F.R.D. 303, 306 (N.D. Ohio 2002); *Mann v. Univ. of Cincinnati*, 1997 WL 280188, *4 (6th Cir.1997) (per curiam). Under Rule 45, a motion to quash must be filed in the district court in which compliance is required.

Moreover, a party may move for a protective order under Rule 26(c). Rule 26(c) provides the Court authority to issue a protective order, for good cause, to prevent "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The protective order can prevent the opposing party from "inquir[ing] into certain matters, or limit[] the scope of disclosure or discovery [of] certain matters." Fed. R. Civ. P. 26(c)(1)(D). In particular, Rule 26(b)(2) requires the Court to limit discovery when "the discovery sought is unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). The Court has "wide discretion in setting the parameters of a protective order. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

### III. Requested Relief

Drips requests that the Court issue an immediate protective order directing Teledrip to (1) immediately suspend service of the objected-to February 18 subpoenas; (2) identify the persons who have already been served; and (3) inform those persons who have been served that the subpoenas have been withdrawn and that compliance by March 5, 2021 is not required.

Drips further requests that the Court order Teledrip to cease propounding discovery

6

seeking communications with Drips and its counsel concerning the action and/or people serving as witnesses. To ameliorate the deleterious impact the subpoenas are having on Drips' business relationships, Drips requests that the Court require that Teledrip, prior to sending any future subpoena to the potential witnesses identified in Drips' Rule 26 disclosures for service, notify Drips of the planned subpoena and allow Drips a reasonable time to inform the potential witness of the requests and seek their cooperation in providing the documents and/or accepting service of the subpoena. Drips requests that, for any persons identified as potential witnesses in Drips' Rule 26 disclosures, Teledrip ensure that responsive documents are first provided to Drips to allow Drips a reasonable opportunity to redact any work product material.

## IV. Argument

Discovery seeking communications with Drips concerning the action and/or people serving as witnesses is not directly relevant to the claims and defenses currently pleaded, improperly seeks work product, is harassing, and creates an undue burden on non-party witnesses.

### A. Teledrip's Discovery Requests Are Not Discoverable

Drips is not objecting to Teledrip's requests for documents related to the underlying incidences of confusion and misleading/false statements made by Teledrip about Drips – the subject of the witnesses' proposed testimony. It has objected only to Teledrip's overbroad requests expressly directed to work product.

Teledrip's explanation for why its requests seek discoverable information is that (according to Teledrip) Drips has used this lawsuit to disparage Teledrip. Teledrip has not pleaded any claim or defense for disparagement, however, and any attempt to amend its pleadings must demonstrate that, among other things, Teledrip has been diligent in seeking amendment. Drips has produced the form document preservation letter it sent to suspected

7

document custodians (which Mr. Murray also received at the commencement of the litigation) as well as non-work product communications concerning Teledrip – which included a handful of incidental references to the lawsuit. Moser Decl. at ¶ 3. None of those communications provide a factual basis for Teledrip's accusations of disparagement and, moreover, they were produced months ago. Nor does Teledrip's speculation about the documents showing "motive" support discovery. Drips has produced all non-privileged/work product emails from Drips' principle decision makers that contain the term "Teledrip" and a variety of other keywords. To the extent documents supporting Teledrip's "motive" theory existed, they would have been produced.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). However, "[a]s the advisory committee's notes clarify, the scope of discovery was not intended to include everything `reasonably calculated to lead to the discovery of admissible evidence.'" *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc*., No. 3:13-CV-00260, 2016 WL 1244697, at *2 (M.D. Tenn. Mar. 30, 2016) (citing Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment). "For that reason, the advisory committee removed the `reasonably calculated' language and restored the proportionality factors to their original place in defining the scope of discovery." *Id*. (internal quotations and citations omitted).

Ultimately, Teledrip's requested discovery is not "relevant to any party's claim or

defense" as required by Federal Rule of Civil Procedure 26(b) and is disproportionate. "The purpose of a lawsuit is for a party to vindicate an existing claim, not engage in a fishing expedition to determine if a claim exists." *National Business Development Services, Inc. v. American Credit Education & Consulting, Inc.*, 2007 WL 2318752 at *2 (E.D. Mich. Aug. 8, 2007) (denying motion for further discovery under Rule 56(f)). Teledrip has not and cannot plead that litigation hold letters sent by Drips' prior counsel were defamatory or otherwise tortious – and it is not entitled to discovery related to claims it has not and cannot plead. "[D]iscovery cannot be used as a fishing expedition to uncover the facts necessary to support the causes of action presented in the complaint, 'even when the information needed to establish a claim . . . is solely within the purview of the defendant or a third party.'" *Anderson v. Boston Scientific Corp.*, Case No. 1:12-cv-00762, 2013 WL 632379, *3 (S.D. Ohio Feb. 20, 2013) (granting motion to dismiss), quoting *New Albany Tractor, Inc., v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011); *see also Lincoln Electric Co. v. MPM Technologies, Inc.*, 2009 WL 2413625 (N.D. Ohio August 5, 2009) (financial data irrelevant to liability theory as pleaded).

>As noted by the Eastern District of Michigan:
>
>Rule 26(b) was amended in 2000 specifically to curtail these kinds of fishing expeditions. Fed. R. Civ. P. 26(b)(1) Advisory Committee notes to 2000 Amendments (noting that substitution of phrase "claims or defenses" for previous phrase "subject matter" intended to "signal[ ] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

*Braxton v. Heritier*, 2015 WL 5123613 (E.D. Mich. August 31, 2015) (granting motion to quash subpoena sent by plaintiff in an attempt to develop a new claim against a non-party).

The requested discovery does not resolve any issue in this case and is duplicative of requests that Drips has already responded to, subject to objections. Even if Teledrip could

articulate a factual basis for speculating into Drips' motives, the tangential nature of any documents that might be exclusively in the possession of non-parties does not justify burdening non-parties with requests for "all documents." The requests are vastly disproportionate to their claimed relevance.

Teledrip is engaged in nothing more than a fishing expedition based on unsupported speculation.

### B.     Teledrip's Subpoenas Seek Work Product

Drips and its counsel communicated in confidence with a number of non-party witnesses in November 2019-January 2020 for the purpose of obtaining their testimony in the form of a declaration or affidavit to be used in this litigation, specifically, the TRO/preliminary injunction that Drips' prior counsel contemplated filing a year ago. Moser Decl. at ¶ 2; Evans Decl. at ¶ 2. The respondents to seven of the February 18, 2021 subpoenas were all contacted for this purpose and communicated with counsel in the course of drafting affidavits/declarations. *Id*. Those communications would not have taken place "but for" the existence of the litigation. Evans Decl. at ¶ 2. Because no motion ultimately was filed, Drips obviously has not relied on any of those declarations. To the extent that tangible documents were created during that process, they are protected by the work product doctrine articulated in Fed. R.Civ. P. [2]26(b)(3).

The plain language of Fed. R.Civ. P. 26(b)(3) provides:

a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial **by *or for* another party or its representative** (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). [emphases added]

Email communications between a party's counsel and a potential witness that would not

---

[2] Any work product not reduced to tangible form is protected by the common law work product doctrine articulated in the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and its progeny.

have taken place but for the litigation, including documents prepared by a potential witness for the attorney, fall within the plain language of the rule. Emails are "documents and tangible things" prepared "in anticipation of litigation or for trial" and, regardless of whether they are prepared by or in the possession of the attorney or the witness, were created "by or for another party or its representative."

Ohio courts have been clear and united in their application of Fed. R.Civ. P. 26(b)(3) to communications between a party and/or its counsel and a non-party regarding their potential testimony. *See Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 286 (N.D. Ohio 2008); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, 2007 WL 4561530, at *2 (S.D. Ohio 2007) (the work product doctrine protects information about the evolution of an affidavit from disclosure).

In discussions regarding the scope of the work product doctrine, Teledrip cited cases for the unrelated holding that a non-party cannot rely on its own anticipation of unrelated litigation to withhold documents based on work product. For example, in the Sixth Circuit's unpublished decision in *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 19 F.3d 1432 (6th Cir. 1994), non-party Murray attempted to withhold its investigation files – not communications with either of the parties to the litigation. *Kauffman v. Medina Cty. Clerk of Courts*, No. 1:13-CV-01261, 2014 WL 1051026, at *4 (N.D. Ohio Mar. 14, 2014) is even more distinguishable, as it involved whether the criminal investigation files of a prosecutor and police prior to civil litigation being contemplated were protected by work product in a later civil action. Unrelated non-party work product was also the subject of *Robert Weiler Co. v. Kingston Twp*., No. 2:07-CV-0760, 2008 WL 4758682, at *6 (S.D. Ohio Oct. 27, 2008).

The scope of work product protection is not restricted to draft declarations/affidavits themselves, as Teledrip might argue – it includes communications related to draft

declarations/affidavits. *See Randleman*, 251 F.R.D. at 286. The fact that the communications are in the hands of third parties is irrelevant because the parties are not adverse to Drips. *See In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 305 (6th Cir. 2002). Based on the parties' meet and confer discussions, Teledrip might also attempt to claim that *Randleman* is not persuasive authority – however *Randleman* has been cited as the "leading case" on this issue and it and *Tuttle* have been held by other courts to be "persuasive and persuading." *ePlus Inc. v. Lawson Software, Inc.*, No. 3:09CV620, 2012 WL 6562735, at *6 (E.D. Va. Dec. 14, 2012); *Clemmons v. Acad. for Educ. Dev.*, 300 F.R.D. 6, 7 (D.D.C. 2013) (citing *Randleman* and *Tuttle* as "the more persuasive line of cases"); *Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F. Supp. 3d 1009, 1014 (N.D. Cal. 2014) (citing *Randleman* and *Tuttle*, "email messages between [third party witness], the Trustee, and the Trustee's attorney, the declaration drafts exchanged, and the signed declaration are protected work product"); *Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, No. 3:13CV00056 SRU, 2014 WL 1665018, at *3 (D. Conn. Apr. 25, 2014) (communications with non-party witness protected); *Boyer v. Gildea*, 257 F.R.D. 488, 493 (N.D. Ind. 2009) (citing *Randleman* and *Tuttle*; "we again will align with the cases that find communications with counsel relating to affidavits as covered by the attorney work product doctrine."); *Burlington v. News Corp.*, No. CV 09-1908, 2010 WL 11474545, at *1 (E.D. Pa. June 7, 2010) (citing *Randleman*; "we join the majority of district courts that have considered the issue.").

Teledrip might also rely on a decision from the Western District of Tennessee, which addresses a context in which the opposing party had established a "substantial need" and "undue hardship" for non-opinion work product under Rule 26(b)(3), and does not contradict these holdings. *Pravak v. Meyer Eye Grp., PLC*, No. 2:07-2433-MLV, 2009 WL 10664851, at *6 (W.D. Tenn. Oct. 22, 2009).

Teledrip itself cannot establish a "substantial need" and "undue hardship" should it be prevented from seeking the requested documents. To establish entitlement to non-opinion work product under Rule 26(b)(3), Teledrip must first establish that the documents are discoverable. As previously explained, documents discussing the action itself or a non-party serving as a witness are not relevant to any claim or defense currently in the case.

Next, Teledrip must show that it has a "substantial need" for the documents and would suffer "undue hardship" should its fishing expedition be curtailed, which it cannot because the witnesses' testimony on the underlying facts can be elicited through deposition. *See Lavatec Laundry Tech., GmbH v. Lavatec, Inc*., No. 3:13CV00056 SRU, 2014 WL 1665018, at *4 (D. Conn. Apr. 25, 2014), citing *Handsome, Inc. v. Town of Monroe*, 2014 WL 348196, at *6 (D. Conn. Jan. 31, 2014) (substantial need does not exist where the information can be sought through deposition). "This is all to which it is entitled." *Clemmons v. Acad. for Educ. Dev*., 300 F.R.D. 6, 8 (D.D.C. 2013); *see also McPeek v. Ashcroft*, 202 F.R.D. 332, 339 (D.D.C. 2001) ("Plaintiff wants to see these documents to probe for inconsistencies in the witnesses' testimony between what they said in the draft and what they said in the final version of their affidavits.... But, if the desire to impeach a witness with prior inconsistent statements is a sufficient showing of substantial need, the work product privilege would cease to exist; there is not a lawyer born who would not like to see opposing counsel's files in order to search for inconsistencies in opposing witnesses' potential testimony."). Moreover, Teledrip could have – but did not – seek to compel production of the documents directly from Drips. The duplicative nature of the requests to non-party witnesses and the requests propounded to Drips establishes that Teledrip does not need to burden non-parties with the requests. Other avenues, which Teledrip chose not to pursue, existed. Finally, "undue hardship" requires that a parties' case be materially impacted.

13

The requested documents are at best tangential to the underlying occurrences of confusion and misleading/false statements. Drips has not objected to requests aimed at the underlying incidences about which the witnesses will testify.

Accordingly, Drips is entitled to assert work product protection over the communications between non-parties and Drips/its counsel concerning this action and/or their potential testimony.

### C. Teledrip's Fishing Expeditions Are Harassing

There is no question that Teledrip should have sought the requested documents directly from Drips. Having gone through extensive meet and confer attempts, Teledrip should have kept the parties' dispute over the proper scope of discovery between the parties and sought the Court's involvement to resolve the relevance and work product issues. It chose not to do that. Instead, Teledrip chose to spring the seven objectionable subpoenas (plus four subpoenas to which Drips is not objecting) on non-parties in jurisdictions located throughout the United States, forcing the prospect of Drips having to file emergency motions to quash in multiple locales prior to the March 5, 2021 return date for the subpoenas.

Moreover, the requests are unduly burdensome, which will further impact Drips' relationships with important clients, prospective clients, and influential people in the industry. Evans Decl. at ¶ 4. Rule 45(d)(3) governs quashing or modifying a subpoena, and provides that the court must do so where it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). As such, Under Rule 45(d)(1), a party has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Teledrip's requests for "all documents that refer or relate" to communications with Drips or its counsel regarding the litigation are inherently overbroad and impose an undue burden. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (holding that a subpoena requesting "all documents" relating to certain people, products, and procedures

imposed an undue burden).  The non-work product requests are even more overbroad, for example, requesting "All documents that refer or relate to Teledrip LLC."  These repetitive requests are fishing expeditions aimed at non-parties.  To protect its relationships, Drips would have to file seven different motions to quash within the next week or risk waiving its objections and subjecting its non-party witnesses to unnecessary and overbroad discovery.  That is the essence of undue burden.

Because the information is available from Drips, Teledrip's decision to instead subpoena `non-party witnesses – who are important clients and potential clients of Drips or otherwise influential in the industry – reveals that its motives are not above board and intended to harass. Teledrip's actions have already resulted in harm to Drips' relationships with its customers. Evans Decl. ¶ 3.  Serving non-parties who are individuals during a pandemic without prior notice creates unnecessary alarm that blow backs on Drips.

The prospect of imminent, irreparable harm to Drips requires emergency relief from this Court.

## V. Conclusion

For the foregoing reasons, Plaintiff Drips Holdings LLC respectfully requests that the Court grant Drips' requested relief.

>Respectfully submitted,
>
>  */s/ Christina J. Moser*
> Deborah A. Wilcox (0038770)
> Christina J. Moser (0074817)
> BAKER & HOSTETLER LLP
> 127 Key Tower, Ste. 2000
> Cleveland, Ohio  44114-1214
> (216) 621-0200 (direct)
> (216) 373-6557 (facsimile)
> dwilcox@bakerlaw.com
> cmoser@bakerlaw.com

                        Uri Litvak (admitted *pro hac vice*)
                        Litvak Law Group, PC
                        2424 SE Bristol St., Ste. 300
                        Newport Beach, CA 92660-0764
                        (949) 477-4900 (telephone)
                        (949) 335-7113 (facsimile)
                        ulitvak@litvaklawgroup.com

                        *Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

      I hereby certify that the foregoing meets the page limits set forth in the Northern District of Ohio Local Civil Rules.

                        ____/s/ Christina J. Moser_____
                        an attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on counsel of record in this case via the Court's Electronic Court Filing system and that any documents filed under seal were served via email.

**Christopher R. Butler**
Hahn, Loeser & Parks - Cleveland
2800 BP Tower
200 Public Square
Cleveland, OH 44114
216-621-0150
Fax: 216-241-2824
Email: cbutler@hahnlaw.com

**Jeffrey A. Yeager**
Hahn, Loeser & Parks - Columbus
Ste. 1400
65 East State Street
Columbus, OH 43215
614-221-0240
Fax: 614-221-5909
Email: jyeager@hahnlaw.com

**Nathaniel B. Webb**
Hahn, Loeser & Parks - Cleveland
2800 BP Tower
200 Public Square
Cleveland, OH 44114
216-621-0150
Fax: 216-241-2824
Email: Nwebb@hahnlaw.com

**Margo N. Uhrman**
Hahn, Loeser & Parks - Cleveland
2800 BP Tower
200 Public Square
Cleveland, OH 44114
216-621-0150
Fax: 216-241-2824
Email: muhrman@hahnlaw.com

                                          ____/s/ Christina J. Moser_____
                                          an attorney for Plaintiff