UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DRIPS HOLDINGS, LLC, | CASE NO. 5:19-cv-2789 |
| PLAINTIFF, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| TELEDRIP, LLC, et al, | REPORT & RECOMMENDATION |
| DEFENDANT. | |

Before the Court is the motion of defendant Taylor Murray. ("Murray" or "Defendant") to dismiss for lack of personal jurisdiction. (ECF No. 68). Plaintiff Drips Holdings, LLC ("Drips" or "Plaintiff") filed a memorandum in opposition (ECF No. 71), and Murray filed a reply (ECF No. 72). For the reasons set forth herein, the Court recommends denying Murray's motion to dismiss.

I. PROCEDURAL BACKGROUND

On December 1, 2020, Drips' filed its Third Amended Complaint ("TAC") asserting five causes of action against Murray: 1) Federal Trademark Infringement under 15 U.S.C. §1125(a) (First Cause of Action); 2) Statutory Unfair Competition and False Advertising under Ohio Revised Code §§ 4165.01 *et seq* (Fourth Cause of Action); 3) Tortious Interference with Business Relationships under Ohio common law (Fifth Cause of Action); 4) Deceptive Trade Practices under Ohio Statutory Revised Code §§ 4165.02 *et seq*. and common law (Seventh Cause of Action); and 5) Misappropriation of Trade Secrets in violation of Ohio Revised Code §§ 1331.61 – 1333.69 (Eighth Cause of Action). (ECF No. 67).

Murray moved to dismiss the TAC on December 4, 2020 (ECF No. 68) and supported the motion with an affidavit from Murray (ECF No. 68-1). Drips opposed the motion on January 4, 2021 (ECF No. 71) and Murray replied on January 19, 2021 (ECF No. 72).

## II. FACTUAL ASSERTIONS

Murray is a resident of California and the founder of multiple internet companies including Defendant Teledrip, LLC. (ECF No. 67, ¶ 18 & 47). Drips alleges that Murray colluded to conduct business under the name "drips.io" and later "teledrip.com", used Drips' proprietary user interface layout, copied Drips' brand and marketing style, and deceived the public into believing that he was – or was affiliated with – Drips in order to benefit from the confusion. (ECF No. 67, ¶¶ 5, 46). Drips alleges that "Murray told at least one other person that he used Teledrip to seek revenge on a Drips Holdings' co-founder. Murray personally knew Drips Holdings' co-founder [and] knew he (and Drips Holdings) resided in Ohio[.]" (ECF No. 67, ¶ 54). Drips alleges that Murray used John Budd ("Mr. Budd"), a resident of Ohio and former customer of Drips, to obtain confidential information regarding "Drips' proprietary work flow, confidential customer pricing information, customer and industry insights, customer scripts, and actual screenshots of Drips' user interface," that he then used to develop the "drips.io" platform. (ECF No. 67, ¶ 55-56). According to Drips, Murray directed Teledrip to compensate Mr. Budd for providing the confidential information. (ECF No. 67, ¶ 60). Drips alleges that Murray "exercised complete dominion and control over Teledrip's operations, including dictating what the Teledrip platform would look like and do, creating the look and feel of Teledrip's website, trade show materials, and other marketing materials, and exercising exclusive control over Teledrip's financial operations." (ECF No. 67, ¶ 67).

Murray's affidavit asserts the following pertinent facts[1]:

1) Murray has never travelled to Ohio outside of attending a case management conference in this case (ECF No. 68-1, ¶ 4);

2) Murray does not have any interest in real property in Ohio (ECF No. 68-1, ¶ 9);

3) Murray is "not solely responsible for registering the domain drips.io. A number of individuals were involved in choosing and registering that trade name. No business was conducted under the name drips.io." (ECF No. 68-1, ¶ 9);

4) Murray does not own any interest in Teledrip but is the sole shareholder of the company "Nerdy Solutions", which owns 50% interest in Teledrip. To take any action on behalf of Teledrip, Nerdy Solutions needs at least one other member to agree. Teledrip's other members are Michael Laible, Michael Fernandez, Raymond Hernandez, and Christopher Moreira. (ECF No. 68-1, ¶ 11);

5) Murray shares responsibility of dominion/control over Teledrip with its other members (ECF No. 68-1, ¶ 12);

6) Teledrip had meetings among its members to make major business decisions and has its own bank account (ECF No. 68-1, ¶ 13);

7) Teledrip's CEOs were chosen collectively by Teledrip's members (ECF No. 68-1, ¶ 14);

8) The name "Teledrip" was one of a number of names considered by the Teledrip team. Murray does not recall who proposed the name and the decision to adopt the name was not approved by a single person. Member Raymond Hernandez promoted adoption of this specific name, which was agreed upon by the other Teledrip members. The members came up with the name "Teledrip" based on the services Teledrip provides, which is "drip" services over the telephone. (ECF No. 68-1, ¶ 15);

9) Michael Fernandez, Raymond Hernandez, and Murray wrote Teledrip's code (ECF No. 68-1, ¶ 19);

10) Murray did not obtain confidential information regarding Drips or build Teledrip using information obtained from Drips (ECF No. 68-1, ¶ 20);

11) Murray did not try to deceive the public into believing that Teledrip was Drips or was affiliated with Drips (ECF No. 68-1, ¶ 21);

---

[1] The Court has not included the "factual assertions" that are nothing more than legal conclusions.

12) Murray did not exploit Mr. Budd's feelings nor induce him into breaching his Access Agreement with Drips (ECF No. 68-1, ¶ 22-23);

13) Murray did not receive confidential information regarding Drips from Mr. Budd or pay him for confidential information regarding Drips (ECF No. 68-1, ¶ 24); and

14) Murray does not consent to jurisdiction in Ohio (ECF No. 68-1, ¶ 25).

In support of Ohio's jurisdiction over Murray, Drips provides the following exhibits:

1) An application dated March 30, 2017 to register the name Teledrip LLC with the Secretary of State of California signed by Christopher Moreira (ECF No. 71-2);

2) AT&T records dated 01/01/2014 through 08/04/2020, purportedly showing 331 phone calls between Murray and Mr. Budd during that time frame (ECF No. 71-3);

3) Deposition of Mr. Budd (ECF No. 71-4);

4) Deposition of Chris Moreira (ECF No. 71-5);

5) Membership Interest Purchase and Sale Agreement between Nerdy Solutions and Mr. Budd's company, Element Networks LLC dated October 30, 2017 in which Element Networks LLC agreed to purchase 10% membership interest in Teledrip, LLC from Nerdy Solutions for $4,100 (ECF No. 71-6);

6) Electronic mail printout from paypal.com to Mr. Budd dated March 31, 2017, reporting a payment made by Element Networks, LLC to Nerdy Solutions in the amount of $1,500 (ECF No. 71-7);

7) Electronic mail printout from "john@en-ads.com", purportedly John Budd, to "taylor@nerdysolutions.com", purportedly Taylor Murray, dated June 23, 2017 and referencing the "TD contract" (ECF No. 71-8); and

8) Membership Interest Repurchase Agreement between Teledrip LLC and Element Networks, LLC dated November 1, 2019 in which Element Networks LLC agreed to sell it's 10% membership interest in Teledrip LLC back to Teledrip for $50,000 (ECF No. 71-9).

In his reply, Murray includes the following documents in support of his argument that Ohio lacks jurisdiction over him:

1) Deposition of Mr. Budd (ECF No. 72-1);

4

  2) Drips Marketing Material (ECF No. 72-2);
  3) Drips Marketing Material (ECF No. 72-3);
  4) Access Agreement to Data Transmission dated September 16, 2016 entered into between Lead Science and Element Networks LLC and its use of the Drips.com website and related services (ECF No. 72-4);
  5) Service Agreement between Element Networks LLC and Teldrip dated June 1, 2017 (ECF No. 72-5).
  6) Email string between Murray and Chris Moreira (ECF No. 72-8);

**III. DISCUSSION**

    **A. APPLICABLE LAW**

Drips bears the burden of establishing that this Court has personal jurisdiction over Murray. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). When faced with a properly supported Rule 12(b)(2) motion, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Where, as here, the Court considers the motion purely on the basis of the written submissions, which is within its discretion, it must then view the affidavits, pleadings and related documentary evidence in the light most favorable to the plaintiff, and "the plaintiff need only make a *prima facie* showing of jurisdiction." *Bird*, 289 F.3d at 871. The Court, however, is not precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). A court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal but may consider a defendant's undisputed factual assertions. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *Theunissen*, 935 F.2d at 1459; *NTCH-West Tenn, Inc., v. ZTE Corp.*, 761 Fed. Appx. 485, 488 (6th Cir. Jan. 16, 2019) (citing *Kerry Steel, Inc.*, 106 F.3d at 153). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff...alleges collectively fail to state a prima facie case

for jurisdiction." *Id.*; *see also Kerry Steel, Inc.*, 106 F.3d at 149.

"A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). "Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing cases). Under Ohio Rev. Code § 2307.382(A), Ohio courts may exercise personal jurisdiction over a non-resident defendant if his conduct falls within one or more of the nine bases for jurisdiction enumerated by the statute. *Conn*, 667 F.3d at 712. Drips argues that Ohio's long-arm statute reaches Murray in four ways: 1) he transacted business in Ohio under R.C. 2307.382(A)(1); he caused a tortious injury in Ohio by an act or omission under R.C. 2307.382(A)(3); he caused tortious injury from outside Ohio by engaging in a persistent course of conduct in Ohio under R.C. 2307.382(A)(4); and he could have reasonably expected that his misappropriation would impact Drips, an Ohio-based company under R.C. 2307.382(A)(6). Drips only needs to establish jurisdiction based on one of these four grounds.

Even assuming, arguendo, that the requisites for state-law jurisdiction have been met, that "does not end the inquiry: the Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Id.* (alteration in original) (citations omitted). For due process purposes, there are two types of personal jurisdiction: general and specific. *Nationwide Mut. Ins. Co.*, 91 F.3d at 793. General jurisdiction exists when a defendant's "contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts

with the state." *Third Nat'l Bank v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). This is referred to as the defendant being "at home in the forum state." *BNSF Ry. Co. v. Tyrrell*, — U.S. —, 137 S. Ct. 1549, 1552 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). Drips does not argue that Murray is subject to general jurisdiction in Ohio. (*See* ECF No. 71, generally).

Specific jurisdiction, on the other hand, exists when the plaintiff's claims arise out of, or relate to, the defendant's contacts with the forum state. *Daimler*, 571 U.S. at 127, 134 S.Ct. 746 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, — U.S. —, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The Sixth Circuit has devised a three-part test for determining the outer limits of *in personam* jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Nationwide Mut. Ins. Co.*, 91 F.3d at 794 (citation omitted).

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts...or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with

the forum State." *Vargo v. D & M Tours, Inc.*, No. 4:18CV01297, 2019 WL 2009278, at *5 (N.D. Ohio May 7, 2019) (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted)). "Ohio['s] 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006). "[F]or both Ohio's long-arm statute and constitutional due process purposeful availment requirements, instances such as the mere existence of a contract, the mere solicitation of business in the forum state, and activity having a mere impact on commerce in Ohio are all insufficient to establish personal jurisdiction." *Fryburg Excavating & Trucking, LLC v. Hudco Leasing, LLC*, No. 5:19-CV-01680, 2020 WL 1930117, at *6 (N.D. Ohio Apr. 21, 2020) (citing Burnshire, 198 F. App'x 425 at 431 (citations omitted)). The Supreme Court has explained that, in examining a defendant's contacts, courts "look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State." *Id*. at 286.

The second constitutional due process requirement is that "the cause of action must arise from the defendant's activities" in the forum state. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) "To meet this requirement, a plaintiff must establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Neogen*, 282 F.3d at 892. "If a defendant's contacts with the forum state are related to the operative facts of a controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267.

Finally, the third prong of the constitutional due process analysis requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. With respect to this prong, when a court finds that the first two prongs of the constitutional due process analysis are met, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). When engaging in analysis for this final factor, this Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp.*, 839 F.2d at 1169-70).

    **B.    ANALYSIS**

Murray argues that this Court lacks personal jurisdiction over him because he did not avail himself to Ohio. Drips argues that Murray purposely availed himself to Ohio because 1) of his "multiple business transactions with Mr. Budd and his company", who are each Ohio residents; and 2) "intentional trademark infringement that targets the trademark owner in its home state satisfies the 'purposeful direction' test set forth in *Calder v. Jones*, 465 U.S. 783, 788 (1984)." (ECF No. 71 at 13). Murray also argues that even if he had sufficient connections to Ohio, the Court does not have jurisdiction over him under the fiduciary shield doctrine because at all times he was acting as an employee/representative of Teledrip. (ECF No. 68 at 12-13).

    **1. Due Process Analysis**

As discussed above, this Court must first evaluate whether Murray has sufficient minimum contacts with Ohio such that he should reasonably have anticipated being haled to court here. This determination is made by assessing whether the instant matter arises out of or is related to Murray's

9

own purposeful activity, which either occurred in Ohio or was directed to Ohio. Murray's purposeful activity must have created a substantial, quality connection with Ohio – one which provided Murray with the privilege of conducting activities within Ohio rather than one which was the result of random, unilateral, or fortuitous contacts with Ohio.

Given this framework, this Court concludes that Murray's contacts with Ohio meet Ohio's long-arm statute under the "transacting any business" clause and the purposeful availment requirements of constitutional due process. In considering all material in the light most favorable to Drips, as set forth below, Murray purposefully availed himself of the privilege of conducting business in Ohio. For his part, Murray does not dispute that he contacted Mr. Budd in Ohio, nor that it was purposeful. He does not contest that he contracted with Mr. Budd's company in Ohio – albeit as a fiduciary. Instead, Murray's factual assertions contest the underlying merits of the claims against him rather than whether this Court may exercise jurisdiction over him. "[A] 'court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal,' [Murray] in this case, because we want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.'" *CompuServe,* 89 F.3d at 1262 (citation omitted).

Taking Drips' factual allegations as true, Drips asserts enough to establish that Murray purposely availed himself to the jurisdiction of Ohio. Murray engaged in numerous phone calls – 331 according to the phone records – with Mr. Budd who is an Ohio resident allegedly for the purpose of obtaining information related to Drips' platform in order to build a similar platform under the name Teledrip. Phone calls made to a resident within Ohio do not necessarily establish jurisdiction. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 551–52 (6th Cir. 2007) ("'[a] numerical count of the calls and letters has no talismanic significance.'") (quoting *LAK, Inc. v. Deer*

10

*Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Rather, "[t]he quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre-or post-agreement communications." *Id.* (citing *LAK, Inc.*, 885 F.2d at 1301 (6th Cir.1989) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985))). "[C]ontacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Id.* (citing *LAK, Inc.*, 885 F.2d at 1301 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984))). In this case, Murray's contacts are not only numerous, they are also the type of contacts that demonstrate purposeful availment. Many of them were initiated by Murray himself and, therefore, are not simply the result of unilateral activity on the part of an Ohio resident. These contacts were made for purposes of obtaining information related to Drips' platform in order to build a similar platform under the name Teledrip.

Additionally, Murray's contacts with Mr. Budd were for the purpose of engaging Mr. Budd's company in various contractual obligations. Although contracting with an Ohio company does not alone establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment. *Burger King*, 471 U.S. at 473, 478–79. Factors to consider are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. In this case, Murray did more than merely have a single contract with Mr. Budd and Element Networks. Murray developed a significant relationship that spanned more than three years during which time Mr. Budd allegedly performed services at the direction of Murray in exchange for compensation. Moreover, the services Mr. Budd performed directly led to Drips' lawsuit against Murray and Teledrip.

Additionally, Murray was personally involved with the formation and marketing of Teledrip.

11

*See Conceivex, Inc. v. Rinovum Women's Health, Inc.,* No. 16-11810, 2017 WL 3484499, at *4 (E.D. Mich. Aug. 15, 2017) (finding sufficient minimum contacts where shareholder defendant directed employees to sell infringing product in Michigan, was aware plaintiff's company was in Michigan, and was personally involved in: the development of the infringing product; the use of infringing trademark name; and in marketing and promoting the infringing product). Similar to the shareholder in *Conceivex*, Murray's actions establish minimum contacts in Ohio: Murray was aware that Drips is an Ohio corporation; Murray was personally involved in choosing the allegedly infringing name "Teledrip"; Murray was personally involved in developing Teledrip's service and platform; he was personally involved in marketing and promoting Teledrip's allegedly infringing service; and he was personally involved in directing Mr. Budd to obtain allegedly confidential information from Drips for the purpose of using the obtained information to develop an infringing product.

Finally, Drips asserts that "intentional trademark infringement that targets the trademark owner in its home state satisfies the 'purposeful direction' test set forth in *Calder v. Jones*, 465 U.S. 783, 788 (1984)."[2] The Sixth Circuit has "narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prod. & Controls, Inc.*, 503 F.3d at 552 (citing *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 n. 1 (6th Cir.2005) ("[W]e have applied

---

[2] "In *Calder*, the Supreme Court held that two Florida residents, a writer and editor for the National Enquirer magazine, were subject to personal jurisdiction in California court because they intentionally aimed their tortious conduct (an allegedly defamatory article) at a California resident, entertainer Shirley Jones. *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482. Even though the article was written and edited in Florida and one of the defendants had only been to California twice, the Court explained that the defendants knew that the focal point of the article as well as the 'brunt of the harm' would be in California, and, therefore, jurisdiction was proper based on the 'effects' of their Florida conduct in California. *Id*. at 789–90, 104 S.Ct. 1482." *Air Prod. & Controls, Inc.*, 503 F.3d at 552.

*Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."); *Reynolds*, 23 F.3d at 1120 (distinguishing *Calder* and making a particularized inquiry of the relations and dealings between the parties to find that an allegedly defamatory article did not establish sufficient minimum contacts); *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("Our review of these post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts.")). "Although the 'effects test' has been limited, the existence of intentional tortious conduct nonetheless 'enhances' a party's other contacts with the forum state for purposes of a purposeful availment analysis." *Id.* at 552-553 (citing *Scotts*, 145 Fed. Appx. at 113 n. 1).

In the present case, Drips alleges that Murray: chose the name "Teledrip" in order to "ride the coattails" of Drips (ECF No. 67, ¶ 68); targeted Drips' clients and industry contacts to sell Teledrip's services by "instruct[ing] his front man to start networking in the industry by using a special application to copy the contacts listed on the LinkedIn profile maintained by Drips Holdings' CEO and co-founder" (ECF No. 67, ¶ 69-70); designed and wrote Teledrip's marking pieces to appear similar to those of Drips (ECF No. 67, ¶ 81-85); knew that Mr. Budd's company Element Networks was a customer of Drips and specifically targeted the company in order to obtain confidential information regarding Drips (ECF No. 67, ¶ 59-60). Murray also allegedly knew that Drips had its principal place of business in Ohio, and that the focal point of his actions (and those of Teledrip) and the brunt of the harm would be in Ohio. (ECF No. 67, ¶ 54). Therefore, Murray's

contacts with Ohio are enhanced by his conduct which, at least as alleged, was intentionally directed to cause harm to an Ohio resident.

"With [these] assumption[s], [Murray] certainly should have anticipated being haled into court," and through this conduct "did, in fact, unfairly injure an Ohio corporation." *Amer. Energy Corp. v. Amer. Energy Ptrs.*, Case No. 13-cv-886, 2014 WL 1908290, at *10 (S.D. Ohio May 9, 2014). Thus, his contact with Ohio is "not the result of random, fortuitous, or attenuated contacts, nor the unilateral activity of another party—it is the result of [Murray's] own intentionally tortious conduct purposefully directed to this forum." *Id.*; *see also Bird*, 289 F.3d at 876 (violations of federal trademark law are analogous to tort cases) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998) (recognizing that the plaintiff's allegation that the defendant engaged in trademark infringement, trademark dilution, and unfair competition by intentionally registering the plaintiff's registered trademarks as his domain names was "akin to a tort case")). Accordingly, Drips has established a prima facie case that Murray purposely availed himself to jurisdiction in Ohio through his contacts and business dealings with Mr. Budd as well as his alleged intentional tortious conduct.

Murray's contacts to Ohio are directly related to the operative facts of the instant matter. The causes of action against Murray—trademark infringement, tortious interference with business relationships and misappropriation of trade secrets—all arise from Murray's dealings with Mr. Budd and Murray's alleged copying of Drips' marketing materials, trademarks, and trade dress. Accordingly, there is a substantial connection between Murray's contacts with Ohio and the causes of action, which satisfies the second prong of the due process analysis. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (courts may exercise personal jurisdiction over "corporate officers who actively and personally involved themselves in conduct violating the

Lanham Act").

Finally, exercising jurisdiction over Murray is reasonable. Once the first two prongs are satisfied, "[a]n inference arises that the third factor is satisfied." *Bird*, 289 F.3d at 875 (internal quotation omitted). Reasonableness is determined by assessing several factors: "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*.

Here, Murray may be burdened by defending in Ohio as he is a California resident, but this burden is diminished by the fact that he is represented by the same counsel as Teledrip, has been highly involved in the litigation as a fiduciary of Teledrip, and has been aware of and participating in the defense the litigation from the beginning. Ohio's interest in protecting the business interests of its citizens and corporations and plaintiff's legitimate interest in obtaining relief in its home forum also weigh in favor of jurisdiction. *See Bird*, 289 F.3d at 875. And finally, because Murray's alleged actions targeted intellectual property located in Ohio, no other place would be a more appropriate forum to afford an efficient resolution of the conflict. *Id.* Thus, exercising jurisdiction over Murray is reasonable and satisfies the due process inquiry.

2. **Fiduciary Shield Doctrine**

The Court next addresses Murray's argument that this Court is precluded from exercising personal jurisdiction over him based on the fiduciary shield doctrine. "The fiduciary shield doctrine prevents individual officers of a corporation from being subject to personal jurisdiction in the forum state merely because the corporation is subject to such jurisdiction." *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019) (citing *Balance*, 204 F.3d at 698 (quoting *Weller v. Cromwell Oil Co*., 504 F.2d 927, 929 (6th Cir. 1974))). However,

> [t]he mere fact that the actions connecting defendants to the state

> were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether [the out-of-state agent] purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Id*. (quoting *Balance*, 204 F.3d at 698 (internal citations omitted)). "[W]hen a plaintiff alleges an individual defendant 'was personally involved with the alleged torts [ ] in the course of his employment,' that defendant is not protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state." *Id*. (quoting *Champion Food Serv., LLC v. Vista Food Exch*., No. 1:13-cv-01195, 2013 WL 4046410, at *4 (N.D. Ohio Aug. 7, 2013)).

Here, as 50% owner of Teledrip, Murray is a fiduciary of the company. *See Groob v. KeyBank*, 108 Ohio St.3d 348, 351 (2006) (a fiduciary is a "person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking"). Drips alleges that Murray personally engaged in tortious conduct. Murray argues that he has only acted as a fiduciary corporate officer and is protected by the fiduciary shield doctrine. However, as explained in *Balance*, the fiduciary shield doctrine does not by itself preclude this Court from exercising personal jurisdiction over Murray. Although jurisdiction over Murray cannot be predicated merely upon the Court's jurisdiction over Teledrip, that is not the case here. Drips alleges that Murray was personally involved in the alleged torts both prior to forming Teledrip and as a fiduciary of Teledrip. Because Drips has established a prima facie case for Murray's personal involvement in the tortious acts, the fiduciary shield does not protect him.

Accordingly, the Court has personal jurisdiction over Murray.

## IV. RECOMMENDATION

For all the foregoing reasons – because Ohio's long-arm statute and constitutional due process requirements are met – this Court can properly exercise personal jurisdiction over Murray. Therefore, For the reasons explained above, the undersigned recommends that the Court DENY Murray's motion to dismiss Drips' Third Amended Complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

DATED: July 28, 2021

    *Carmen E. Henderson*
**Carmen E. Henderson**
**United States Magistrate Judge**

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).