UNITED STATES DISTRICT
COURT NORTHERN DISTRICT
OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| DRIPS HOLDINGS, LLC, | ) | CASE NO. 5:19-cv-2789 |
| | ) | |
| PLAINTIFF, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| TELEDRIP, LLC, et al, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

This matter comes before the Court on objections filed by Defendant Taylor Murray to the Report and Recommendation ("R&R") of the Magistrate Judge. On July 28, 2021, the Magistrate Judge issued her R&R in this matter recommending that the Court deny Murray's motion to dismiss for lack of personal jurisdiction. On August 11, 2021, Murray objected to the R&R. On August 25, 2021, Plaintiff responded to the objections. The court now resolves the objections.

District courts conduct de novo review of those portions of a magistrate judge's R&R to which specific objections are made. 28 U.S.C. § 636(b)(1)(C).

Here, Murray takes issue with the magistrate judge's determination that he had sufficient contacts in Ohio to establish jurisdiction and that that Magistrate Judge failed to examine the fiduciary shield doctrine under the Ohio long arm statute. Doc. 112.

**1. Due Process Analysis**

Regarding Murray's contacts with Ohio, the Magistrate Judge concluded that:

this Court concludes that Murray's contacts with Ohio meet Ohio's long-arm statute under the "transacting any business" clause and the purposeful availment requirements of constitutional due process. In considering all material in the light most favorable to Drips, as set forth below, Murray purposefully availed himself of the privilege of conducting business in Ohio.

Doc. 108, p. 10.

Murray contends that the "Magistrate [Judge] failed to appreciate that under Ohio law and the due process clause, phone calls and a contract with an individual who happens to be in Ohio are not sufficient to establish jurisdiction." Doc. 112, p. 8. Murray's objection is unfounded.

The Magistrate Judge explained:

Taking Drips' factual allegations as true, Drips asserts enough to establish that Murray purposely availed himself to the jurisdiction of Ohio. Murray engaged in numerous phone calls – 331 according to the phone records – with Mr. Budd who is an Ohio resident allegedly for the purpose of obtaining information related to Drips' platform in order to build a similar platform under the name Teledrip. Phone calls made to a resident within Ohio do not necessarily establish jurisdiction. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551–52 (6th Cir. 2007) ("'[a] numerical count of the calls and letters has no talismanic significance.'") (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Rather, "[t]he quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre-or post-agreement communications." *Id.* (citing *LAK, Inc.*, 885 F.2d at 1301 (6th Cir.1989) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985))). "[C]ontacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Id.* (citing *LAK, Inc.*, 885 F.2d at 1301 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984))). In this case, Murray's contacts are not only numerous, they are also the type of contacts that demonstrate purposeful availment. Many of them were initiated by Murray himself and, therefore, are not simply the result of unilateral activity on the part of an Ohio resident. These contacts were made for purposes of obtaining information related to Drips' platform in order to build a similar platform under the name Teledrip.

Additionally, Murray's contacts with Mr. Budd were for the purpose of engaging Mr. Budd's company in various contractual obligations. Although contracting with an Ohio company does not alone establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment. *Burger King*, 471 U.S. at 473, 478–79. Factors to consider are "prior negotiations and contemplated future consequences, along with the terms

> of the contract and the parties' actual course of dealing." *Id*. at 479. In this case, Murray did more than merely have a single contract with Mr. Budd and Element Networks. Murray developed a significant relationship that spanned more than three years during which time Mr. Budd allegedly performed services at the direction of Murray in exchange for compensation. Moreover, the services Mr. Budd performed directly led to Drips' lawsuit against Murray and Teledrip.

Doc. 108, p. 10-11. Murray does not point to any error in the above reasoning. Instead he reasserts the general law that phone calls alone and a single contract alone are not enough to establish jurisdiction. The Magistrate Judge recognized these principals and explained why, under the facts of this case, Murray's contacts were not simply phone calls and a contract.

Murray further contends that the Magistrate Judge erred when she determined that Murray purposely availed himself to jurisdiction in Ohio for constitutional due process purposes. Notably, the Sixth Circuit Court of Appeals has explained that despite differences between Ohio's long-arm statute and the constitutional due process requirements for personal jurisdiction, Ohio's "'transacting any business' standard is coextensive with the Due Process Clause in that it requires both that the defendant have purposefully availed itself of the privilege of acting in Ohio or have caused a consequence in Ohio and that the act or consequence in Ohio be sufficiently substantial to support jurisdiction." *Burnshire*, 198 F. App'x at 430. The Magistrate Judge explained:

> Additionally, Murray was personally involved with the formation and marketing of Teledrip See *Conceivex, Inc. v. Rinovum Women's Health, Inc.*, No. 16-11810, 2017 WL 3484499, at *4 (E.D. Mich. Aug. 15, 2017) (finding sufficient minimum contacts where shareholder defendant directed employees to sell infringing product in Michigan, was aware plaintiff's company was in Michigan, and was personally involved in: the development of the infringing product; the use of infringing trademark name; and in marketing and promoting the infringing product). Similar to the shareholder in Conceivex, Murray's actions establish minimum contacts in Ohio: Murray was aware that Drips is an Ohio corporation; Murray was personally involved in choosing the allegedly infringing name "Teledrip"; Murray was personally involved in developing Teledrip's service and platform; he was personally involved in marketing and promoting Teledrip's allegedly infringing service; and he was personally involved in directing Mr. Budd to obtain allegedly confidential information from Drips for the purpose of using the obtained

3

information to develop an infringing product.

Doc. 108, p. 21. The Magistrate Judge further concluded that Murray's contacts with Ohio were "enhanced by his conduct which, at least as alleged, was intentionally directed to cause harm to an Ohio Resident." Doc. 108, p. 13-14. Murray contends that the "brunt of the harm" did not occur in Ohio, and therefore these contacts do not support a finding of jurisdiction. Doc. 112, p. 13. This argument is without merit.

"[A] corporation . . . is a citizen of its states of organization and principal place of business." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). It is uncontested that Plaintiff's principal place of business is in Akron, Ohio. Therefore, the harm Plaintiff alleges due to Murray's actions monetary damages due to lost customers is felt by an Ohio citizen, regardless of where the customers were located. *Burnshire*, 198 F. App'x at 430.

Murray purports to support his objections with evidence not previously presented to the Magistrate Judge. However, this newly submitted evidence does not support his contention that the Magistrate Judge "failed to appreciate that under Ohio law and the due process clause, phone calls and a contract with an individual who happens to be in Ohio are not sufficient to establish jurisdiction." Doc. 112, p. 8. Rather, this new evidence attempts to create new factual issues that were not presented to the Magistrate Judge. Therefore, pursuant to Local Rule 72.3(b), the Court declines to consider this evidence.

Upon review, the Court concurs with Magistrate Judge's conclusion that Murray transacted business in Ohio to satisfy Ohio's long-arm statute and that he purposely availed himself of the privilege of acting in Ohio in satisfaction of constitutional due process.

### 2. Fiduciary Shield Doctrine

Murray contends that the Magistrate Judge erred by not analyzing the fiduciary shield

doctrine under the Ohio long arm statute. Doc. 112, p. 10. This objection is without merit.

The Magistrate Judge acknowledged that the fiduciary shield doctrine prevents individual officers from being subject to personal jurisdiction in Ohio on the sole basis that the corporation is subject to jurisdiction in Ohio. Doc. 108, p. 15. Further, the Magistrate Judge explained that the fiduciary shield doctrine is limited as "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." Doc 108, p. 15-16, quoting *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 698 (6th Cir. 2000).

Therefore, the Magistrate Judge accurately set forth the law regarding the application of the fiduciary shield doctrine in Ohio, noting that "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether [the out-of-state agent] purposefully availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id.*

In her analysis of the application of Murray's fiduciary shield doctrine defense, the Magistrate Judge explained:

> Here, as 50% owner of Teledrip, Murray is a fiduciary of the company. See *Groob v. KeyBank*, 108 Ohio St.3d 348, 351 (2006) (a fiduciary is a "person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking"). Drips alleges that Murray personally engaged in tortious conduct. Murray argues that he has only acted as a fiduciary corporate officer and is protected by the fiduciary shield doctrine. However, as explained in *Balance*, the fiduciary shield doctrine does not by itself preclude this Court from exercising personal jurisdiction over Murray. Although jurisdiction over Murray cannot be predicated merely upon the Court's jurisdiction over Teledrip, that is not the case here. Drips alleges that Murray was personally involved in the alleged torts both prior to forming Teledrip and as a fiduciary of Teledrip. Because Drips has established a prima facie case for Murray's personal involvement in the tortious

5

> acts, the fiduciary shield does not protect him.
>
> Accordingly, the Court has personal jurisdiction over Murray.

Doc. 108, p. 16. Further, as set forth above, the Magistrate Judge properly and fully analyzed Murray's minimum contacts with Ohio as necessary to satisfy both the Ohio's long-arm statute *and* due process. Doc. 108, p. 10. Accordingly, Murray's objection is overruled.

**Conclusion**

For the reasons stated above, Murray's objections are OVERRULED. The R&R is ADOPTED IN WHOLE. Murray's motion to dismiss is hereby denied.

Dated: December 20, 2021  /s/ *John R. Adams*
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE