UNITED STATES DISTRICT
COURT NORTHERN DISTRICT
OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| DRIPS HOLDINGS, LLC, | ) | CASE NO. 5:19-cv-2789 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| TELEDRIP, LLC, et al, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter comes before the Court on objections filed by the parties to the Report and Recommendation ("R&R") of the Magistrate Judge. On April 5, 2022, the Magistrate Judge issued her R&R in this matter recommending that the Court grant in part Plaintiff Drips Holdings, LLC ("Drips") motion for sanctions against Defendants Teledrip and Taylor Murray (collectively "Defendants"). Drips alleges that Defendants spoliated evidence and seeks sanctions in the form of a mandatory adverse jury instruction. Doc. 129. The R&R recommended granting Drips' motion on the spoliation of evidence but recommended the lesser sanction of a permissive adverse-inference jury instruction. On April 19, 2022, both Drips and Defendants objected to the R&R. Doc. 153, 154. The parties have responded to the objections. The court now resolves the objections.

District courts conduct de novo review of those portions of a magistrate judge's R&R to which specific objections are made. 28 U.S.C. § 636(b)(1)(C). The R&R summarizes the relevant facts as follows:

> From 2017 to present, Teledrip has used Slack as a typical mode of communication for both internal communications as well as customer communications. On October 25, 2019, Murray downloaded a portion of the Slack data, which did not include Slack channels containing internal communications. On October 28, 2019, Murray changed the retention setting of Teledrip's Slack from unlimited to seven days and deleted the previously exported Slack data. On November 26, 2019, Drips brought the instant action and the following day Teledrip received a litigation hold letter from Drips along with service of the complaint. Teledrip did not change the seven-day retention policy for its Slack communications until September 2020.
>
> Doc. 144, p. 1-2.

**I.  APPLICABLE LAW**

Federal Rule of Civil Procedure 37(e) states as follows:

(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

>    (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>    (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>        (A) presume that the lost information was unfavorable to the party;
>
>        (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>        (C) dismiss the action or enter a default judgment.

Thus, as to the prerequisites to sanctions under Rule 37, Drips must establish that there was an obligation to preserve ESI at the time of destruction, and that the destroyed evidence was relevant to Drips' claims or defenses. *Drive Time Car Sales Co., LLC v. Pettigrew*, 2019 U.S.

Dist. LEXIS 66339, *9 (S.D. Ohio April 18, 2019). For the lesser sanctions pursuant to Rule 37(e)(1), the party seeking sanctions must additionally demonstrate prejudice. Id. For the more severe sanctions pursuant to Rule 37(e)(2), Drips must establish that Defendants "acted with the intent to deprive another party of the information's use in the litigation." Fed.R.Civ.P. 37(e)(2). This culpable state of mind requires more than a showing of negligence or gross negligence. *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

## II.  DEFENDANTS' OBJECTIONS

Defendants take issue with the R&R's conclusions that they were on notice of anticipated litigation as early as August of 2019 and that they knowingly spoliated the Slack data with intent to deprive Drips from discovering its content.

### A.  Anticipation of Litigation

Upon review, the Court concurs with the R&R's conclusion that Teledrip was aware of anticipated litigation in August of 2019. Specifically, the R&R states "Teledrip, through Murray, was admittedly aware that it was potentially infringing on a trademark ['Conversational SMS'] belonging to Drips as early as the August 2019 trade show. Accordingly, Defendants' duty to preserve the Slack data was triggered no later than August of 2019 as it was reasonably foreseeable that Defendants faced a trademark dispute with Drips at that time." Doc. 144, p. 6.

Defendants assert that they could not have contemplated the possibility of a trademark dispute based on the 'Conversational SMS' mark because the mark was rejected by the USPTO as being merely descriptive. Doc. 153, p. 4.

Indeed, Drips filed its trademark application on March 11, 2019. Doc. 153-1, p. 5. On June 7, 2019, Drips was notified of "non-final action" stating that the mark was merely

descriptive. Doc. 153-1, p. 6. The application was amended and was still pending on August 22, 2019 when Christopher Moreira, a Teledrip member, instructed a vendor to change Teledrip's trade show booth panels because "[w]e just found out that our competitor has trademarked the phrase 'Conversational SMS.'" Doc. 134-1, p. 2. This email clearly evidences that at some point between March 11 and August 22, 2019, Defendants became aware of the potential trademark and were concerned about its implications. This awareness is further evidenced by a screenshot of a slack message (that has since been deleted) between Moreira and Defendant Murray wherein Moreira warned Murray of a potential trademark issue and Murray responded, "[Y]ou're scared of a trademark dispute[.] [M]arketing? Yes it's branding. [I]'ve done all the branding so far. [Y]ou've trust me[.] [N]ow we have a trademark dispute you want to change the branding[.] Doc. 129-24. In their objections, Defendants make no attempt to explain why Murray's acknowledgment of a trademark dispute is not clear evidence that they were aware of potential litigation.

Instead, Defendants assert that because the mark was ultimately placed on the Supplemental Register rather than the Principle Register it is not a protectable trademark and the R&R incorrectly gave this fact weight. Doc. 153, p. 5. Defendants make much of the distinction between the Supplemental and Principal Register to support their argument that the R&R should have given no weight to the registration on the Supplemental Register. Doc. 153, p. 5-6. However, this argument was not raised before the Magistrate Judge and therefore this Court will not consider it for the first time.[1]

---

[1] Defendants contend that Plaintiff raised the August 2019 date for the first time in its reply brief. Defendants call this "sandbagging."  However, it is not properly characterized as sandbagging when the Defendants chose not to

**B.     Culpable State of Mind**

Defendants object to the R&R's conclusion that they knowingly spoliated the Slack data with the intent to deprive Drips from discovering its content.  This objection is based upon Defendants' argument that they were not on notice of anticipated litigation until after the case was filed.  They reiterate their argument that although the deletion of the data was intentional, they "changed its data retention settings with a good faith belief that it minimized potential liability for the theft or disclosure of its customer's confidential information under the California Consumer Privacy Act of 2018 ("CCPA") and the International Standard of Operation Compliance ("ISO"). Doc. 153, p. 8.

Defendants contend that a jury should decide what its intentions were by deleting the Slack data as "[t]his is ultimately a credibility determination most properly left to the trier of fact." Doc. 153, p. 9.  Notably, this issue is before the Court on Drips' motions for sanctions for spoliation pursuant to Fed. R. Civ. P. 37(e)(2) —not a cause of action. Accordingly, it is a matter for the Court to determine first that "the party acted with the intent to deprive another party of the information's use in the litigation" and if yes, then fashion a sanction for that conduct. Fed.R. Civ. P. (37)(e)(2).  This "requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation. This finding may be made by the court when ruling on a pretrial motion[.]" Fed. R. Civ.P. 37(e)(2), Advisory Comm. Note, 2015 Amendment.

Regarding the requisite intent, a showing of negligence or even gross negligence is not enough. *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016). The Court may also infer

---

take the available remedy. Assuming Plaintiff raised this issue for the first time in its reply, Defendants did not seek leave to file a sur-reply or otherwise raise its concern before the Magistrate Judge. Accordingly, the argument is not properly before this court.

intent to deprive from Defendants' actions. *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019), quoting *Moody v. CSX Transportation, Inc*., 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017). Notably, the Court should consider the timing of the deletion of the data and change in the retention policy, and whether there is a credible explanation for the failure to preserve the data. *Culhane*, 364 F. Supp. 3d at 774; Fed.R.Civ.P. 37(e)(2) Advisory Comm. Note, 2015 Amendment.

As noted above, Defendants were on notice of litigation in August of 2019. It is not disputed that on October 28, 2019, Defendants changed their Slack retention settings from indefinite to a seven-day retention period and deleted all its Slack data up to that point. It is telling of Defendants' state of mind that they admitted to intentionally deleting and changing the retention policy *after* they became aware of litigation. Defendants do not object or otherwise contest the R&R's conclusion that Slack was their primary mode of communication, and "the spoliated evidence from Teledrip's Slack data would likely have contained evidence relevant to Drips' claims of trademark infringement, unfair competition, false advertising, misappropriation of trade secrets, tortious interference, business disparagement, and deceptive trade practices." Doc. 144, p 11.

Further evidencing their intent to destroy relevant data, Defendants did not change their Slack retention settings for **ten months** after receiving the litigation hold [2], claiming that "Murray was uncertain how to comply" with the CCPA and the ISO considering the litigation hold in this case. Doc. 153 p. 9. Defendants defend their actions by asserting that they "unfortunately…did not consult with counsel on how to properly comply with the various obligations under the

---

[2] Defendants were served with this lawsuit on November 27, 2019 and received a litigation hold the next day.

CCPA/ISO and the litigation hold in this action." Doc. 153, p. 9. Defendants inaccurately state that "once Drips asked Teledrip to produce the Slack messages, Murray changed Teledrip's Slack retention settings to store all messages." Doc. 153, p. 9. This is blatantly false.

Drips propounded requests for production of documents encompassing the Slack data on March 9, 2020. Doc. 129-39. On May 13, 2020, Drips sent Defendants a discovery deficiency letter, seeking an explanation for the lack of provided Slack data. Doc. 129, p. 13. On May 27, 2020, Defendants' counsel explained that Teledrip implemented a seven-day retention policy prior to the litigation as part of its ISO and CCPA compliance efforts. Id.

The parties repeatedly discussed this issue, notably on July 7, 2020, with Drips specifically asking Defendants for citations to support their conclusion that the seven-day retention policy was required to comply with the CCPA and ISO. Doc. 129-36, p. 2. On September 15, 2020, Defendants confirmed that "Teledrip's Slack retention policy settings were changed last week." Doc. 129-37. To the extent they seek to blame their purported "confusion" on their failure to consult with their attorney, that solution sounds in a malpractice action, rather than a defense to the intentional destruction of evidence.

Defendants contend that the destruction of the data was not intended to deprive Drips of evidence, but rather was based upon the misunderstanding of its obligations under the CCPA and the ISO. The R&R concluded that "neither the CCPA nor the ISO required the destruction of the Slack data." Doc. 144, p. 7. The R&R conducts an in depth-review and discussion of the polices in question, specifically noting that Defendants did not point to any specific provision upon which they relied upon to destroy the Slack data. Id. Defendants do not offer any explanation to this Court, nor do they attempt to point to anything specific to support their belief that destroying the

data was the best way to comply with the regulations. While the R&R labeled this explanation as "plausible," the Court is not so willing to give Defendants' excuse the benefit of the doubt. Simply put, this explanation is not credible when coupled with the timing of the destruction and continued refusal to change the retention settings to indefinite despite the litigation.

The R&R aptly states "Defendants' refusal to abide by the litigation hold letter, or seek clarification from their attorney, strongly suggests that the earlier change in policy was not an innocent change of policy to comply with ISO or CCPA requirements." Doc. 144, p. 9. This Court agrees. For these reasons, the Court overrules Defendants' objections to the R&R.

### III. PLAINTIFF'S OBJECTIONS

Plaintiff objects to the R&R on the grounds that it used the wrong evidentiary standard to evaluate Defendants' explanation for deleting Slack data and changing the retention policy in October 2019. Doc. 154, p. 5. Because it erred by concluding that Defendants' excuse was "plausible," Drips asserts, it incorrectly recommended a permissive adverse inference rather than a mandatory adverse inference. Further, Drips asserts that the R&R erred in crediting Defendants' belief that Drips would not sue based on its Trademark Applications.

#### A. The Date of the Duty to Preserve

In its initial motion for sanctions, Drips asserted that Defendants were on notice of the duty to preserve as of the January 17, 2017 cease and desist letter. The R&R rejected this argument. Doc. 144, p. 4. Drips does not object to this conclusion.

Instead, Drips takes issue with the R&R's conclusion[3] that "the Court is persuaded by

---

[3] To the extent that the R&R concludes that Teledrip had no basis to believe it would be sued given the USPTO's rejection of Drips' application, it is dicta.

Defendants' argument that it had 'no basis for believing that it would be sued over the use of the TELEDRIP name' given the United States Patent and Trademark Office's rejection of Drips's applications to trademark the 'Drips' logo, character mark, and service mark as merely descriptive and generic." *Internal citations omitted,* Doc. 144, p. 4; Doc. 154, p. 8. However, the R&R went on to conclude that "Teledrip, through Murray, was admittedly aware that it was potentially infringing on a trademark belonging to Drips as early as the August 2019 trade show. Accordingly, Defendants' duty to preserve the Slack data was triggered no later than August of 2019 as it was reasonably foreseeable that Defendants faced a trademark dispute with Drips at that time." Doc. 144, p. 6.

In its motion before the Magistrate Judge, Drips did not set forth a specific date upon which it believed Defendants were on notice between the January 2017 letter and August of 2019. Instead, Drips generally asserted that "TeleDrip was aware by the time Murray destroyed the Slack evidence that it was likely to end up in litigation with Drips." Doc. 129, p. 12. In fact, the R&R agreed with Drips' contention. Similarly, Drips fails to provide this Court with any specific date prior to August of 2019 that it believes would have triggered notice, nor does it point to any other data allegedly destroyed prior to August of 2019. Drips fails to explain how, even if this Court agreed that the R&R erred on this issue, it would change the ultimate result; that Defendants destroyed evidence after they had a duty to preserve said evidence. As such, the Court has no need to address the merits of Drips' objection on this issue.[4]

    **B.**     **The Sanction**

---

[4] The Court is aware, however, that Drips raises this argument as support for its argument for harsher sanctions. As the Court sustains Plaintiff's objection regarding a harsher sanction, there is no need to address the merits of this specific argument.

Although Drips contends that the R&R applied the wrong evidentiary standard to evaluate Defendants' excuse to determine whether it possess the culpable state of mind, this objection in fact challenges the R&R's determination regarding the appropriate sanction.

Regarding Defendants' excuse, the R&R found that it was doubtful, but plausible. Doc. 144, p. 9. However, the analysis did not stop there. Further explaining, the R&R reviewed the excuse in light of Defendants' particular actions and the timing in the matter and concluded that the evidence "strongly suggests that the earlier change in policy was not an innocent change of policy to comply with the ISO or CCPA requirements." Doc. 144, p. 9. In other words, simply because the excuse might be plausible does not necessarily mean that it is credible. As explained above, this Court concludes that the excuse is not credible. Regardless of plausibility, the R&R recommended that this court find that Defendants "knowingly spoliated the Slack data with the intent to deprive Drips from discovering its content." Doc. 144, p. 10. This Court agrees with this conclusion.

As to the appropriate sanction, the R&R noted that "[T]his Court stated that Defendants' destruction of and failure to preserve the Slack data was intentional. Although a mandatory adverse-inference instruction is certainly permissible, it is not required." *Citations omitted*, Doc. 144, p. 14. The R&R then recommends a permissive adverse-inference instruction. Id. This Court disagrees with the recommendation and instead, for the reasons stated above, will impose the mandatory adverse-inference instruction.

## IV. Conclusion

For the reasons stated above, Defendants' objections are OVERRULED. Plaintiff's objections are OVERRULED in part and GRANTED in part. The R&R is ADOPTED IN PART

and REJECTED IN PART. The Court ADOPTS the R&R's conclusion that Defendants' destruction of and failure to preserve the Slack data was intentional. The Court REJECTS the R&R's recommendation of a lesser sanction and concludes that a mandatory adverse-inference instruction is warranted.

Dated: <u>September 29, 2022</u>             <u>  /s/ John R. Adams          </u>
                                             JUDGE JOHN R. ADAMS
                                             UNITED STATES DISTRICT JUDGE